WILLIAM M. BECKER v. FRANK A. SEYMOUR and Another.[1]

February 2, 1898.

Nos. 10,880—(277).

**Bank — Pledge of Depositor's Note — Set-Off by Maker — Duty of Pledgee.**

B. made his note for $500 to the Bank of M., which pledged it, with other collaterals which it also owned, to the Bank of S., to secure a loan then made to it. The collaterals so pledged were of the value of three times the amount of the loan they secured. M. became insolvent, closed its doors, and the appellants herein were appointed receivers of its estate. B. then had on deposit on open account with M. $170, and when his note matured he paid it to the pledgee, except a balance of $170, which he claimed was offset by his deposit. The pledgee refused to recognize his claim, and insisted on the payment of the balance, which B. paid under protest. The pledgee, after paying its loan from money realized from the collaterals, returned to the receivers two-thirds in amount and value of the original collaterals. *Held*, that B. is equitably entitled to be repaid from the fund in the receivers' hands arising from the returned collaterals the $170 so paid on his note.

On the petition of William M. Becker, in the matter of the receivership of the Bank of Minnesota, an order was made by the district court for Ramsey county, Willis, J., requiring Frank A. Seymour and William H. Lightner, receivers of the bank, to refund to the petitioner, Becker, the sum of $170.90. From this order the receivers appealed. Affirmed.

[1] Reported in 73 N. W. 1096.

*Young & Lightner*, for appellants.

The petitioner, having paid the full amount of his note to the bank as pledgee, has no equitable lien upon the surplus moneys, or the uncollected collateral, turned over by the pledgee to the receivers after satisfaction of its claim in full. Balbach v. Frelinghuysen, 15 Fed. 675; Trafford v. Hall, 7 R. I. 104; Munger v. Albany, 85 N. Y. 580; Gray v. Rollo, 18 Wall. 629; Philler v. Jewett, 166 Pa. St. 456.

*George L. Becker* and *Ira B. Mills*, for respondent.

*Edmund S. Durment*, by consent, filed a brief for respondent.

START, C. J.

This is an appeal by the receivers of the Bank of Minnesota from an order of the district court of Ramsey county directing them to pay to the respondent $170.90. The trial court found the allegations of the petition upon which the order is based to be true, and the only question for our decision is whether the facts found sustain the conclusion that the respondent was entitled to the sum so ordered to be paid to him.

The short facts are the following: The respondent on October 17, 1896, executed to the Bank of Minnesota his negotiable promissory note for the sum of $500, due January 15, 1897, and secured its payment by a pledge of a bank certificate of deposit for the sum of $1,958.70 made to him by the Traverse County Bank, due February 1, 1897. The Bank of Minnesota borrowed of the First National Bank of St. Paul $207,964.68, and, to secure the payment thereof, transferred to it promissory notes and securities, the property of the Bank of Minnesota, to the amount and value of $616,721.69, included in which was the note of the respondent. The Bank of Minnesota did not repay such loan, but, being insolvent, it closed its doors December 23, 1896, and the appellants were appointed receivers thereof the next day.

At the time the Bank of Minnesota failed and the receivers were appointed, it was indebted to the respondent in the sum of $170.90 on open deposit account. The respondent, on the due day of his note, paid to the First National Bank of St. Paul (which, for convenience, will be designated the pledgee), the whole amount due

on his note, except a balance of $170.90, which he claimed was offset by his deposit in the Minnesota Bank. The pledgee refused to allow this off-set without the consent of the receivers, which not being given, it threatened to commence an action against the respondent on his note for such balance and he then paid it under protest. The pledgee collected from the collaterals so held by it sufficient to pay its claim against the Minnesota Bank in full, and returned to the receivers collaterals, so transferred to secure its loan, to the amount and value of $409,000.

There is no controversy as to the facts, or as to the actual value of the collaterals returned. The respondent claimed that he was equitably entitled to have the $170.90 so paid by him under protest refunded to him from the money realized by the receivers from the returned collaterals, and the trial court so ordered. We agree with the receivers that set-off is only available as a defense, and, further, that the respective rights and liabilities of all the parties to this proceeding were fixed and determined when the Bank of Minnesota became insolvent, and the receivers appointed. Whatever equities the respondent then had to offset his deposit against his note could not thereafter be impaired by any act of the pledgee of his note, or of the receivers. We must therefore look beneath the external form which the transaction has assumed by the acts of the pledgee and receivers, and deal with the real facts and equitable rights of the respondent.

It is certain that, if the Bank of Minnesota had retained the respondent's note, he would have been entitled to set off the amount of his deposit against it. St. Paul v. Leck, 57 Minn. 87, 58 N. W. 826; Stolze v. Bank, 67 Minn. 172, 69 N. W. 813. When the note was transferred to the pledgee as collateral security, any right of offset then or thereafter existing was impaired, but only to the extent necessary to satisfy the debt of the pledgee; and if the latter had returned the note to the receivers, unpaid to the amount of $170.90, general creditors of the insolvent would have had no interest therein, for the respondent's right to offset his deposit would then have been perfect, and it and the note would have canceled each other. Or, in other words, all of the collateral notes, which were approximately of a value three times as great as the debt they

secured, were the property of the receivers, subject to the payment of the debt to the pledgee, and subject, further, to the equity of the respective makers thereof who had deposits with the insolvent bank to offset them against these notes, as against the receivers' interest therein; hence general creditors had no interest in the collaterals until the claim of the pledgee and such equity of the respective makers were satisfied.

No claim is made that any of the makers of the collateral notes had any equity superior to that of the respondent, and he was equitably entitled to have left unpaid on his note in the hands of the pledgee a sum equal to his deposit, so that when the note was returned to the receivers his offset would be available, unless its payment was reasonably necessary to protect the interests of the pledgee. He was, however, forced to pay, and did pay under protest, the whole amount thereof, although both the pledgee and receivers had notice of his equity. There was no necessity for the pledgee exacting payment in full of the respondent's note. It had three dollars of collaterals for one of debt, and, after the debt was paid in full, nearly two-thirds in amount of the collaterals originally transferred to the pledgee were returned to the receivers.

It seems to be conceded by the receivers that the respondent might have maintained an action against the pledgee to compel it to exhaust other collaterals first, and thus preserve his right of set-off; but, because he did not do so, it is claimed that he lost all his rights in the premises. Such a conclusion is inequitable, in view of the fact that the pledgee had a surplus of collaterals in excess of its debt to the value of $400,000, from which to secure payment of the $170.90, which it exacted from the respondent, and the further fact that the cost of prosecuting such an action would be oppressive, considering the small amount involved.

Under these circumstances the respondent was justified in paying the balance of his note under protest, and seeking redress from the receivers. The result of compelling him to pay the balance of $170.90 on his note was to increase the fund in the hands of the receivers arising from the collaterals returned by just that amount, to which neither the receivers nor the general creditors have any equitable claim, for the reasons already stated. If the pledgee had

recognized the equity of the respondent, and had not enforced payment of the balance due on the note, but collected the amount thereof from the other collaterals, the note would have been returned to the receivers; and, while the aggregate amount of collaterals returned would not have been thereby changed, yet the fund to be realized by the receivers would have been reduced $170.90, because when the note came back to the receivers the unpaid balance thereon would have been at once canceled by the respondent's deposit. But instead of so returning this note, as it ought to have done, the pledgee returned other collaterals of equal amount, against which there was no offset, so far as the record discloses; hence there is no escape from the conclusion that the fund in the hands of the receivers arising from the returned collateral is $170.90 larger than it would have been if the respondent's equity in the premises had been regarded.

In its last analysis, this case is simply one where the receivers have obtained, not from the assets of the insolvent, but from the respondent, through and by the act of the pledgee, $170.90 which does not equitably belong to them, or to the general creditors. If the receivers are required to repay this sum to respondent, a wrong will be righted, and no injustice done to others. Equity regards that done which ought to have been done, and in this case it will treat the unpaid balance of $170.90 due on the respondent's note as offset by his deposit of equal amount, and regard his payment of $170.90 on the note, as against the receivers, as having been made to them, through and by the act of the pledgee, under protest and without consideration, and require them to repay the amount from the fund in their hands arising from the returned collaterals, which was increased pro tanto by such payment.

Order affirmed.