# Harry S. Streeter, Receiver of the Farmers State & Savings Bank, Appellant, v. Herman Junker, Sr., and Charles Rayhorn. Herman Junker, Sr., Appellee.

## Gen. No. 7,208.

1. BANKING—*right to set off deposit against accommodation note given to enable bank to reopen.* A depositor in a bank, which has been closed because of an excess of undesirable assets, who has signed as accommodation maker a note given by the insolvent cashier to enable the bank to reopen, is entitled to set off the amount of his deposit, which he increased after the bank was reopened, against the note as against the claim of the receiver that he should pay the entire amount of note and share proratably with other creditors in the division of the assets, where the evidence shows that he signed the note upon representations of the cashier that it was mere accommodation paper which he would not be required to pay, that he had but a slight understanding of English and transacted the business in question through a relative, and that he had no intention to deceive the banking authorities into permitting the bank to reopen.

2. BANKING—*when accommodation signer of note to insolvent bank entitled to set off of individual deposit.* A depositor in a bank, which was closed because of an excess of undesirable assets, who signed as accommodation maker a note given by the insolvent cashier to enable the bank to reopen, is entitled to set off the amount of his individual deposit in a suit by the receiver of the bank, which was again closed as insolvent, against the cashier and such maker for the amount of the note, notwithstanding the want of mutuality, since such accommodation maker is the real party in interest, both the bank and the cashier being insolvent, and stands as surety.

3. BANKING—*right to set off deposit against debt to insolvent bank not dependent upon demand for payment of paper not due.* A depositor who held a certificate of deposit which was not due and had not been presented for payment at the time of the appointment of a receiver for such bank, is not deprived of his right to set off such certificate and his other individual deposits in such bank against a note signed by him as accommodation maker and given to the bank on a previous occasion to enable it to reopen, by the fact that no demand had been made by him on such certificate of deposit.

4. BANKING—*right to set off deposit against note to bank not dependent upon liquidation by receiver of bank's assets.* A depositor in an insolvent bank is not deprived of the right to set off the amount of his deposit against his note to the bank and relegated only to his distributive share of the net assets upon final liquidation thereof by the receiver, by reason of the fact that the amounts alleged in his plea of set-off were not due at the time a receiver was appointed, since he is entitled to set off the full amount of his deposit regardless of whether the receiver realizes a sufficient amount to pay depositors in full or not.

5. SAVING QUESTIONS FOR REVIEW—*sufficiency of refused proposition of law to preserve question.* Refusal of the court to hold as a proposition of law that the amount of a deposit in an insolvent bank is not a proper subject of set-off against a note to the bank signed by the depositor as accommodation maker for the reason that the amount to which the depositor would be entitled on final distribution of assets could not then be determined, but which makes no reference to the fact that the amounts alleged under a plea of set-off by the depositor were not due him at the time of the appointment of a receiver for the bank, does not preserve for review the question that such depositor's right of set-off is limited to his distributive share when it shall become liquidated, because the deposits had not matured at the appointment of the receiver.

6. BANKING—*when depositor's note to bank not secured so as to bar right to set off deposit.* A note signed by a depositor as accommodation maker to enable the principal maker, the insolvent cashier of the bank, to substitute it for undesirable assets held by the bank, as a condition that the bank might reopen, is not secured by such undesirable assets so as to bar the depositor's right to set off his deposit against the note in a suit by the receiver to enforce the note, where the evidence shows that the undesirable assets in question have a face value of $194,000, of which but $9,400 was collected during two years at an expense of $1,500, and that the balance of such assets is practically worthless and that the expenses of administration will leave nothing for distribution to creditors, especially where the depositor was not a party to the arrangement by which he was to share in the distribution of such assets to him.

7. JUDGMENTS—*right to attorney's fees under judgment by confession on note not destroyed by opening with leave to plead.* The right to an allowance for attorney's fees under a judgment by confession on a promissory note is not destroyed by opening the judgment with leave to plead, the judgment remaining as a lien, such act not amounting to a vacation of the judgment.

8. INTEREST—*right to interest on set off of deposits against debt to bank.* A depositor in an insolvent bank who is entitled to set

off his deposit against an indebtedness to the bank is not thereby entitled to interest on his deposit from the date the bank closed its doors.

9. BANKING—*date of receivership fixes time for computation of judgment on note due insolvent bank by depositor entitled to set-off.* In an action by the receiver of an insolvent bank on note given the bank by a depositor thereof having a right to set off the deposit against the note, where judgment by confession on the note was opened with leave to plead, the net balance due the bank, after allowing credit for the deposit, should be determined, as of the date of the appointment of the receiver and not as of the date of judgment by confession, and the amount of final judgment computed on such net balance with accrued interest and attorney's fees from the date the bank closed to the date of judgment by confession and interest on the latter amount at five per cent from the latter date to the date of final judgment.

Appeal by plaintiff from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the April term, 1923. Reversed and remanded with directions. Opinion filed August 13, 1923. *Certiorari* denied by Supreme Court (making opinion final).

W. R. HUNTER and J. BERT MILLER, for appellant.

E. P. HARNEY and A. L. GRANGER, for appellee.

MR. PRESIDING JUSTICE PARTLOW delivered the opinion of the court.

The appellant, Harry S. Streeter, receiver of the Farmers State and Savings Bank, obtained judgment in the circuit court of Kankakee county against Charles Rayhorn and Herman Junker, Sr., for $2,529.40, and an appeal has been prosecuted by Streeter as receiver.

Prior to April 15, 1919, Charles Rayhorn was the cashier and a director of the Farmers State and Savings Bank of Grant Park, Illinois. On April 15, 1919, upon an examination of the books of the bank by the Auditor of Public Accounts, the bank was closed because there were $208,000 of undesirable assets in the

bank which the auditor insisted must be removed before the bank could be reopened. About $54,000 worth of these assets were replaced by cash or its equivalent, leaving a balance of $154,788.62 to be replaced. The directors agreed to raise either cash or its equivalent to this amount to be approved by the auditor and placed in the bank in lieu of the undesirable assets. Each director was to put up about $10,000 of good paper. Rayhorn was insolvent and presented his unsecured note for $5,000 as part of this amount, but it was rejected. He thereupon asked Junker, a farmer then about eighty years old, who was a depositor at the bank, to sign his note as security. Junker signed the note, which was payable to the order of "myself" and was indorsed by Rayhorn and Junker. No collateral security was given Junker when this note was signed, nor has he been given any since. The note was without consideration as far as he was concerned. This note, together with the other notes put up by the directors, were presented to the auditor, were approved and placed in the bank as part of the assets. The auditor permitted the bank to reopen on April 26, 1919, with Mary Moecker as cashier. The bank continued open until March 25, 1920, when it was again closed by the auditor as insolvent. The appellant was appointed receiver by the circuit court of Kankakee county on April 10, 1920. At the time the bank closed on April 15, 1919, Junker had on deposit $2,800. When the bank closed on March 25, 1920, Junker had on deposit $4,122.19.

On May 18, 1921, the receiver caused judgment to be entered upon this note by confession for principal and interest, together with ten per cent attorney's fees, making a total judgment of $6,182. During the same term of court, Rayhorn and Junker made a motion to vacate the judgment. On December 10, 1921, the judgment was opened and leave was granted defendants to plead. It was ordered that the judgment

should stand as a lien. A number of pleas were filed by Junker and Rayhorn, but it is conceded that, under a stipulation entered into during the trial, the only plea necessary for consideration is the third plea, which averred that the note sued on was an accommodation note; that Junker was a surety thereon for Rayhorn; that Rayhorn was, at the time of the execution and delivery thereof, the cashier of the bank; that the bank had knowledge of all the facts and circumstances surrounding the execution and delivery of the note; that Rayhorn, at the time the note was executed, and at all times since, was and is insolvent; that at and before the time of the commencement of this suit the bank was indebted to Junker in the sum of $4,122.19, being money on deposit to the credit of Junker.

The cause was tried by the court without a jury. After hearing the evidence and passing on certain propositions of law, the court found there was due on the note $6,651.59 for principal, interest and attorney's fees, together with interest at five per cent on the amount of the judgment as confessed on May 18, 1921; that Rayhorn was insolvent; that Junker was entitled to a set-off in the sum of $4,122.19, being the amount of the deposit to his credit at the time the bank closed on March 25, 1920. Judgment was rendered for the difference between these two amounts, viz.: $2,529.40.

The first question on this appeal is as to the right of Junker to a set-off against the note signed by him and Rayhorn upon which the suit was brought for the amount which Junker had on deposit at the time the receiver was appointed.

It has been held in this State that a depositor in a bank may set off the amount of his deposit against an indebtedness which he owes the bank, and this may be done even after a receiver has been appointed. *Kelly v. Garrett*, 6 Ill. 649; *McCagg v. Woodman*, 28 Ill. 84;

*Graff v. Kahn,* 18 Ill. App. 485; *Third Swedish M. E. Church v. Wetherell,* 43 Ill. App. 414; *Niblack v. Feldman,* 204 Ill. App. 443. This rule seems to be recognized by the appellant, but he insists that it should not be applied in this case for the reason that the note was given by Rayhorn and Junker to deceive the auditor and cause him to reopen the bank; that the note was an asset of the bank, and to allow Junker to set off his deposit against the note would be to perpetrate a fraud upon those who made deposits in the bank after it had been reopened; that under section 11 of the Banking Act [Cahill's Ill. St. ch. 16a, ¶ 11], it was the duty of the receiver to collect the assets, and it was the duty of the auditor to make a ratable division of the money collected among the creditors; that to allow Junker a set-off to the amount of his deposit would interfere with the proper order of distribution and enable Junker to obtain an unjust advantage. In support of this argument, appellant calls attention to the fact that at the time the bank closed the first time, Junker had more than $2,800 on deposit, and that it is reasonable to assume that one of the inducements for his signing the note was that he might have an opportunity to withdraw this money when he so desired; and if the bank was not reopened he would only receive his pro rata share of the common assets of the bank.

We do not think this position is supported by the facts in evidence. It is undoubtedly the law that where notes have been executed to a bank for the purpose of making an appearance of assets so as to deceive the examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have collected the securities, the receiver representing the creditors can maintain an action, and the makers are estopped, upon the insolvency of the bank, to allege want of consideration for the notes. It was so held in *Golden v. Cer-*

*venka,* 278 Ill. 409, and in *Niblack v. Farley,* 286 Ill. 536, but the question of set-off was not involved in either of those cases. Those cases simply held that the persons who executed the notes were liable, for the reason that the notes were executed for the purpose of deceit. At the time Rayhorn attempted to put the note in question into the bank he was insolvent, and his unsecured note was of no value. He was requested to get security and he went to Junker, who was a German about eighty years of age. Junker did not speak or understand English readily and transacted most of his business through his daughter-in-law. There is a conflict in the evidence as to what was said at the time Junker signed the note. Rayhorn testified he procured the signature of Junker on April 24, 1919, in the back room of the bank, that he informed Junker and his daughter-in-law, Minnie Junker, the bank was closed, that there were undesirable assets which had to be removed and good assets placed in their stead; that the undesirable assets would be placed in the hands of a trustee, and when collected, the makers of these notes would be credited pro rata upon the notes; that he did not think Junker would have to pay the note, at least he would only have to pay a small portion of it. On the other hand, this is denied by Minnie Junker, who testified that Rayhorn told Junker and her that Junker would never have to pay this note; that it was simply an accommodation note and the bank was solvent.

It is apparent that Junker had no intention or purpose in deceiving the auditor. He simply signed the note to accommodate Rayhorn upon the representation that the bank was solvent and that he would not have to pay the note. At that time he had $2,800 on deposit. If he signed the note for the sole purpose of drawing his $2,800 he did not subsequently carry out that intention. As soon as the bank opened for business he might have drawn his deposit and placed it in

another bank where it would have been secure. He not only did not withdraw it, but he made additional deposits, and when the bank was finally closed he had on deposit $4,122.19. These facts refute any inference of fraud which might be made against the motive of Junker in signing the note. If, under the cases cited, a depositor may set off his deposit against an indebtedness which he owes the bank, we see no reason why Junker did not have the right so to do. He surrendered his entire deposit in payment of the note, and judgment was rendered against him for the balance. He will be required to pay the note in full. No valid reason can be found why Junker could not set off at least the $1,300 deposited after the date of the note, and we are of the opinion he had a right to set off the entire deposit. It would not be within the spirit of the law to require him to pay the note in full and take his pro rata share of his deposit. The court was not in error in allowing the set-off and the propositions of law held and refused upon this point were correct.

It is next insisted by the appellant that the set-off was improperly allowed for the reason that the note was signed by Rayhorn and Junker, while the deposit was in the name of Junker, therefore, they were lacking in mutuality. It is a well-recognized principle of the common law that set-offs must be mutual, but that rule has its exceptions which are equally well recognized by courts and text-writers. The exception which is most generally recognized is where a principal and surety are sued together. In such cases the courts recognize the right of the surety to set-off, as a defense, a debt due the principal. In case of the insolvency of the principal a set-off may be allowed to the surety. *McCagg v. Woodman,* 28 Ill. 84; *Phelps v. Reeder,* 39 Ill. 172; *Himrod v. Baugh,* 85 Ill. 435; *Rothschild v. Bruscke,* 131 Ill. 265; *Engs v. Matson,* 11 Ill. App. 639; *Hayes v. Cooper,* 14 Ill. App. 490; *Graff v. Kahn,* 18 Ill. App. 485; *Third Swedish M. E. Church*

*v. Wetherell,* 43 Ill. App. 414; *McChesney v. Bell.* 59 Ill. App. 84; *Marcy v. Whallon,* 115 Ill. App. 435; *Cary v. Niblo,* 155 Ill. App. 338. The evidence shows that both the bank and Rayhorn were insolvent on the date the note was signed, and both of them are insolvent at the present time. Junker is the real party in interest on this note. Rayhorn has nothing at stake. No judgment could be collected against him. If the set-off is not allowed, Junker will be required to pay the note in full and also lose the most of his deposit. Under the authorities cited, he was the surety, and was the real party in interest and had a right to set off the deposit against the note even though the deposit was in his name and the note was signed by him and Rayhorn.

On March 10, 1920, the bank issued to Junker a certificate of deposit for $816.50, payable upon the return of the certificate properly indorsed. On May 12, 1919, Junker had on deposit in the savings department $2,869.49, which was increased to $2,978.19 on March 25, 1920. Appellant contends that the certificate of deposit was not due until it was presented to the bank for payment, properly indorsed; that it was not due at the time the receiver was appointed, consequently could not properly be set off against the note; that the evidence does not show the terms upon which the deposit in the savings department was held, and as the burden was upon Junker to prove that it was due and payable, and he failed to make such proof, that item could not properly be set off. In support of this contention, appellant cites *Taylor v. Weir,* 63 Ill. App. 82. We do not think the authority cited is conclusive. It is well settled that a bank depositor's right to a set-off does not depend on whether his obligation to the bank has matured at the time of the bank's insolvency, so long as the deposit is due at that time. No demand for a deposit in an insolvent bank is necessary as a condition precedent to making a set-off of the deposit,

if the deposit is otherwise allowable against a note of the depositor. 3 R. C. L., sec. 156, p. 528; 23 R. C. L., sec. 63, p. 59. In *Arnold v. Hart,* 176 Ill. 442, the pass book furnished by the bank to its patrons contained a printed condition to the effect that the bank had the right to demand sixty days' notice in writing as a condition of payment on all sums over $100. It was contended that there could be no recovery against the bank without first making a demand. It was held that where a bank suspends payment and closes its doors, it waives the necessity for a demand on the part of the depositor. We do not think there was any necessity for a demand precedent to Junker's right to set off his deposit.

Appellant further contends that none of the amounts alleged in the plea of set-off were due at the time a receiver was appointed, and the only set off to which Junker would be entitled would be his distributive share of the net assets, and what his distributive share would be could not be determined until the final report of the receiver; that under these circumstances the amount to which Junker would be entitled is not liquidated and such damages cannot be set off. This point was raised by appellant's replication to the third plea. The court sustained a demurrer to the replication, and we think it was properly sustained. The replication averred that the affairs of the bank were in the hands of a receiver and that final collection of the assets might be sufficient to pay Junker in full, and therefore, at that time, the claim of set-off was for an unliquidated sum and could not be set off. The replication was not good. Under the law Junker was not compelled to first pay the note in full and then wait until the receivership was settled to receive his pro rata share upon his deposits. He had a right to set-off to the full amount of his deposit whether the receiver realized a sufficient amount to pay all depositors or not. Appellant claims this question was properly pre-

served for review by a proposition of law submitted but refused by the court. In the proposition submitted, no question was raised about the maturity of the claim, but the court was asked to hold that the amount of Junker's deposit was not a proper subject of set-off for the reason that the amount to which he would be entitled on final distribution could not be determined by the court at that time.

The whole difficulty upon this question of set-off arises out of a confusion of ideas concerning the principle of set-off. A set-off is not the distributive share which goes to the creditors and has nothing to do with it, but it is an adjustment which the law makes between people who are mutually indebted, and the difference between the two accounts is what constitutes the assets of the insolvent. In *Scott v. Armstrong,* 146 U. S. 499, Chief Justice Fuller said:

"Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

Appellant further contends that Junker had a security for this debt for the reason that he was to share in the distribution of the assets which were removed from the bank at the time it first closed its doors, which amounted to about $194,000, and therefore he was not entitled to a set-off because he had security for his note. The evidence shows that during a period of about two years $9,400 was collected from these assets at an expense of $1,500, and the evidence shows that the balance of this $194,000 is practically worthless. Out of this amount collected must be paid the expenses of administration, leaving practically nothing for distribution to the persons who signed the notes

substituted for the undesirable assets. The plan to distribute the proceeds of these undesirable assets among the persons who made the notes depends for support upon the evidence of Rayhorn. Junker was not a party to this agreement, and there may be considerable doubt as to his right to share in such distribution even if the evidence showed there was to be such a distribution. We are of the opinion that his note was not secured so as to deprive Junker of the right to the set-off.

Two cross errors have been assigned by Junker. He first claims that the court was in error in allowing any attorney's fee to appellant, for the reason that where a judgment is reopened and there is a trial before a court and a jury, no attorney's fee can be allowed; that the vacation of the judgment operates to nullify the power of attorney and the acts of the attorney thereunder, and the cause of action is in the same state as if the suit had been commenced by a summons. The cross error is not to the amount of the attorney's fee but is to the allowance of any attorney's fee at all. In support of this contention two cases are cited: *George J. Cooke Co. v. Johnson,* 179 Ill. App. 83, and *Morrison Hotel & Restaurant Co. v. Kirsner,* 245 Ill. 431. Upon examination we find that in each of these cases the judgment was entirely vacated, while in this case the judgment was merely opened with leave to plead, and the judgment was to remain a lien. Under these circumstances the appellant was entitled to attorney's fee. *Fisher v. Weckcr,* 210 Ill. App. 345; *West v. McNaughton,* 211 Ill. App. 259.

The second cross error is that the court failed to allow interest on the set-off from the time the receiver was appointed. It is contended that under the authorities from the time the bank closed its doors the deposits were due, and where a set-off is proper, interest should be allowed from the date the bank was

closed; that the amount to which Junker would be entitled would be five per cent on his deposit from March 25, 1920, to the date of the judgment, which was November 25, 1922, amounting to $549.42, which amount, together with the $600 attorney's fee, makes a total deduction of $1,149.72 from the judgment of $2,529.40, leaving only $1,379.68 as the balance due.

The rights and liabilities of creditors and debtors of an insolvent corporation are fixed and determined on the day the receiver is appointed. *Hynes v. Illinois Trust & Savings Bank*, 226 Ill. 95. The final judgment in this case was entered on November 25, 1922. In its final judgment the court found for the appellant in the sum of $6,651.59, being the principal of the note and interest thereon to May 18, 1921, the date of the judgment, together with attorney's fee, which amount included interest on the judgment at five per cent from May 18, 1921, the date confession was taken, to November 25, 1922, the date of the final judgment. The court further found that Junker and Rayhorn were entitled to a set-off in the sum of $4,122.19, the amount of the deposit on the date the bank closed its doors; that there was due appellant from Junker and Rayhorn a balance of $2,529.40, being the difference between $6,651.59 and $4,122.19, and judgment was rendered accordingly.

In this we think the court was in error. The bank was closed on March 25, 1920. A receiver was appointed on April 10, 1920. The rights and liabilities of Junker and the bank became fixed and determined on the date the receiver was appointed. On that date Junker was indebted to the bank in the sum of $5,000, with interest at six per cent from April 24, 1919, the date of the note, to April 10, 1920, the date the receiver was appointed. On April 10, 1920, the bank was indebted to Junker in the sum of $4,122.19, the amount of his deposit, and for this amount he was entitled to credit on the note. The balance due on the

note was not paid and the note was put in judgment on May 18, 1921. On this latter date appellant was entitled to the balance due on the note, together with interest and attorney's fees, from March 25, 1920, to May 18, 1921. The final judgment was entered on November 25, 1922. Appellant was entitled to a judgment on that date for the amount of the judgment which should have been rendered on May 18, 1921, with interest at five per cent until the rendition of the final judgment.

For the reason stated, the judgment will be reversed and the cause remanded with directions to enter judgment in accordance with the views herein expressed.

*Reversed and remanded with directions.*