The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Complainants, v. Bank of Harvey, Defendant.
South Suburban Motor Coach Company, Petitioner, Appellant, v. R. A. Pascoe, Receiver of the Bank of Harvey, Appellee.

## Gen. No. 36,787.

Opinion filed December 11, 1933. Rehearing denied and opinion slightly modified December 27, 1933.

GREYDON L. WALKER, for appellant.

GLENN, SCHWARTZ, REAL & BROWNING, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The South Suburban Motor Coach Company, a corporation, filed its intervening petition in a suit brought by the People of the State of Illinois on the relation of Oscar Nelson, auditor of public accounts, against the Bank of Harvey for the liquidation of that bank, a receiver having theretofore been appointed by Nelson, as auditor of public accounts. The prayer was that the petitioner be allowed a preferred claim of $2,853.64, and that the receiver pay the sum in the due course of administration. The demurrer of the receiver was sustained to the intervening petition; it was dismissed and petitioner appeals.

The record discloses that the Bank of Harvey was closed by the board of directors on January 9, 1932, and at that time the petitioner had on deposit with the bank, in its checking account, $2,853.64. Some time prior to that date petitioner was indebted to the Bank of Harvey in the sum of $5,000, for which it gave its note to the bank, due February 4, 1932. The Bank of Harvey was indebted to the First National Bank of Chicago in the sum of nearly $200,000, and to secure the payment of that indebtedness pledged as collateral 20 promissory notes of its customers which it held (among them petitioner's note of $5,000) aggregating more than $88,000, and bonds of the par value of nearly $400,000. The Bank of Harvey carried a cash deposit in the First National Bank of nearly $27,000. A receiver was appointed March 1, 1932, who subsequently paid in full the balance due and owing from the Bank of Harvey to the First National Bank of Chicago and received back from the First National Bank some of the pledged notes and bonds. The balance due on the returned notes was more than $18,000, and the amount and value of the bonds returned were unknown to the petitioner. The makers of a number of the pledged notes were allowed to set off the amount of their respective deposits against their

notes. Shortly after the Bank of Harvey closed, petitioner was notified by the First National Bank that it held petitioner's note for $5,000 and demanded payment at its maturity February 4, 1932. The petitioner had no defense to the note as against the First National Bank and was compelled to pay it in full, which it did on its due date.

It has long been the settled rule that a depositor indebted to a bank which is closed on account of insolvency, may reduce his indebtedness by setting off his deposit. *McCagg v. Woodman,* 28 Ill. 84; *Scott v. Armstrong,* 146 U. S. 499; *Yardley v. Philler,* 167 U. S. 344; *Streeter v. Junker,* 230 Ill. App. 366. There is no controversy as to this rule of law, but the receiver contends that when the Bank of Harvey pledged the promissory notes, including the petitioner's, to the First National Bank as collateral, to secure the payment of its indebtedness to the First National Bank, the notes passed to and became the property of the First National Bank, and that since they were possessed and owned by the First National Bank at the time the Bank of Harvey failed, the petitioner, who subsequently paid his note to the First National Bank, was not entitled to have the note reduced by setting off his deposit. In support of this the case of *Balbach v. Frelinghuysen,* 15 Fed. 675, is cited. In that case the court stated that there were two questions to be decided: (1) whether complainants were entitled to have returned to them a check which was deposited by them for collection in a certain bank, but which was not forwarded until the bank closed on account of insolvency; (2) whether the receiver should allow to complainants the amount of their deposits in the insolvent bank as a set-off to their indebtedness to the bank on their two promissory notes. The court discusses at considerable length the first proposition. In disposing of the second question the court said that if complain-

ants' two notes were in the bank at the time it closed, unquestionably complainants would be entitled to have the amount of their deposit set off in reduction of the notes, but stated that the notes had been "endorsed away for value" before the bank failed; that one of the notes was sent by the Newark bank (later closed) to a bank in New York for discount, and the proceeds credited to the makers of the note (complainants) on the books of the Newark bank; that later when the note fell due it still belonged to the New York bank and was paid by the makers (the Newark bank having no interest in the note or its proceeds); that the Newark bank having overdrawn its account with the New York bank, sent the latter "a batch of paper" as collateral security, which included one of complainants' notes; that when these pledged notes matured and were paid to the New York bank, credit was given the Newark bank. Later when the Newark bank failed it was still indebted in a large sum to the New York bank, which still held complainants' note as collateral. When all the notes held as collateral had been paid to the New York bank it had $7,000 over and above the amount the Newark bank owed it, which sum it paid to the receiver of the Newark bank. Complainants contended that they were entitled to an equitable lien on this $7,000, which should be offset against the note, and it was held that this contention was not available. All that was said in the opinion on this point is, "Nor will the receiver be permitted, as against the creditors of the insolvent bank, to use any portion of this surplus to give a preference over them to the complainants."

In that case no preference was shown any of the makers of the pledged notes, while in the case at bar a number of the makers of the pledged notes were allowed to set off the amount of their deposits in reduction of their respective notes. And we think the fact that petitioner had paid his note to the First

National Bank, while makers of others of the pledged notes had not done so, ought not to prejudice him. He was compelled by demand of the First National Bank to pay his note when it came due. He had no defense against that bank. But the equities of the case are that when petitioner paid $5,000 to the First National Bank, the indebtedness of the Bank of Harvey to the First National Bank was thereby reduced by $5,000, which necessarily increased the assets of the Bank of Harvey the same amount.

Petitioner having by his payment of $5,000 increased the assets of the bank in the hands of the receiver to that amount ought in equity and good conscience, under the law, to be allowed the amount of his deposit at the time the bank closed. This is the effect of the holding in the cases of *Niblack v. Feldman*, 204 Ill. App. 443; *Becker v. Seymour*, 71 Minn. 394; *Hall v. Burrell*, 22 Colo. App. 278; *Clute v. Warner*, 40 N. Y. S. (8 App. Div. 40) 392.

In the *Niblack* case the receiver brought suit against the makers and guarantors of a promissory note. The suit was dismissed as to the makers and judgment entered against the guarantors. In that case the makers made their note for $4,000 payable to the LaSalle Street Trust & Savings Bank. Afterward that bank became indebted to a bank in Boston, and to secure the indebtedness pledged a great many securities, including the $4,000 note. Afterward the LaSalle Street Bank was closed and a receiver was appointed who, by order of court, paid the indebtedness to the Boston Bank, obtaining a return of the collateral. At the time the LaSalle Street Bank closed the makers of the $4,000 note had a deposit in that bank, and it was held that this deposit could be set off in reduction of the liability of the guarantors of the $4,000 note. It was there said, ''The law does not impose upon receivers the obligation of defeating the

just, legal claims of special or lien creditors in the interest of general creditors of an insolvent.''

In *Becker v. Seymour, supra* (71 Minn. 394), Becker made his note for $500 to the Bank of Minnesota. Afterward that bank pledged it with other collaterals to the First National Bank of St. Paul to secure its indebtedness. The Bank of Minnesota became insolvent and closed its doors and receivers were appointed. At that time Becker had on deposit in the Bank of Minnesota $170.90. His note matured and he was compelled to pay it in full to the pledgee, the First National Bank of St. Paul. Afterward the pledgee bank collected sufficient from the collaterals to pay the balance due it from the Bank of Minnesota and returned the balance of the collaterals to the receivers. It was held that Becker was entitled to be repaid the $170.90 from the proceeds the receiver had obtained from the returned collaterals. The court said (p. 396) : ''When the note was transferred to the pledgee as collateral security, any right of offset then or thereafter existing was impaired but only to the extent necessary to satisfy the debt of the pledgee; and if the latter had returned the note to the receivers, unpaid to the amount of $170.90, general creditors of the insolvent would have had no interest therein, for the respondent's right to offset his deposit would then have been perfect and it and the note would have canceled each other.'' The court further said that although Becker was compelled to pay his note to the pledgee, that fact did not defeat his right to have paid to him by the receiver the $170.90. The court further said (p. 397) : ''The result of compelling him to pay the balance of $170.90 on his note was to increase the fund in the hands of the receivers arising from the collaterals returned by just that amount, to which neither the receivers nor the general creditors had any equitable claim. , , , '' And continuing (p. 398) : ''In

its last analysis this case is simply one where the receivers have obtained, not from the assets of the insolvent, but from the respondent, through and by the act of the pledgee, $170.90 which does not equitably belong to them, or to the general creditors.''

In *Hall v. Burrell*, 22 Colo. App. 278, a depositor in a bank executed his note to it, which it pledged with other securities for a loan. The bank later became insolvent and a receiver was appointed. The depositor filed his claim for the amount of his deposit and paid the note held by the pledgee. There were other depositors in the same situation, and it was held that the receiver in paying out the proceeds of the returned securities must pay the depositors similarly situated *pro rata*. That court quotes with approval the case of *Becker v. Seymour*, 71 Minn. 394, *supra*.

The fact that the procedure followed by the depositor in the *Becker* and *Hall* cases was in some respects different from the method of procedure by the petitioner in the instant case, does not, we think, change the principle involved.

The judgment of the circuit court of Cook county is reversed and the matter remanded with directions to overrule the demurrer of the receiver to the intervening petition, and for further proceedings in accordance with this opinion.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.