15358

*EX PARTE* MECHANICS FEDERAL SAVINGS & LOAN ASS'N OF ROCK HILL

ZIMMERMAN v. CENTRAL UNION BANK OF SOUTH CAROLINA *ET AL.*

(18 S. E. (2d), 592)

January, 1941.

*Messrs. Dunlap & Dunlap,* and *Messrs. Spencer & Spencer,* all of Rock Hill, for appellant,

*Messrs. Melton & Belser,* of Columbia, for respondents,

Attorneys for appellant filed a reply brief, but cited no new cases.

January 28, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

The appellant, Mechanics Federal Savings and Loan Association of Rock Hill, S. C., a depositor in the Central Union Bank of South Carolina, filed its petition in the cause in which a conservator had been appointed for the bank, seeking an order giving it a preference in the distribution of the assets of the bank on the following state of facts:

The petitioner-appellant, in addition to being a depositor of the bank at the time it closed, was also a debtor of the bank to the extent of $13,000.00. The indebtedness, evidenced by certain notes, was less than the amount of the deposit. Prior to the closing of the bank the notes of the association, along with other securities, had been pledged by the bank to the Reconstruction Finance Corporation, to secure loans to the bank. A large part of the loans was unpaid, and the notes of the association and other securities were still in the hands of the Reconstruction Finance Corporation, at the

time the bank closed. The association thereafter paid its notes, with accrued interest thereon, to the Reconstruction Finance Corporation, in order to avoid suit.

The pledged collateral of the bank in the hands of Reconstruction Finance Corporation greatly exceeded in value the amount of the bank's indebtedness to the corporation, and some time after the payment of its notes by the association, this excess collateral, of the admitted value of several hundred thousand dollars and more than necessary to pay appellant and all others in like situation, was returned to the conservator of the bank.

The association is seeking in this case to obtain payment of its deposit in full to the extent of the amount paid to the Reconstruction Finance Corporation in satisfaction of its notes.

Before the association paid its notes to the Reconstruction Finance Corporation, it obtained from a Circuit Judge, in the liquidating cause, with the consent of the attorneys for the conservator, an order setting forth ·that in making payment of its notes, the association was not to be prejudiced in the assertion of the claim made by it that any surplus collateral which may be returned ·to the conservator shall be impressed with a trust in favor of the association and others in a similar situation (we do not consider ·this order as having any bearing upon the issues in the case, and ·are reciting it merely as factual matter).

Upon the above state of facts, it is of course obvious that the Reconstruction Finance Corporation did not become the owner of the bank's securities; it held the same in the capacity of a pledgee with such contractual rights as were given to it by the form of the note used by the parties. Subject to the prior right of the Reconstruction Finance Corporation to liquidate the securities to the extent necessary to effect collection of the bank's notes held by it, the ultimate ownership of the securities was in the bank, and pending payment of the bank's notes, the bank held equitable rights in the se-

curities and against the Reconstruction Finance Corporation, such as the right to an accounting of collections made thereon. So that at the outset we should keep in mind the fundamental fact that both before the bank closed, and also after the appointment of the conservator, the bank's title to the pledged securities, including the notes of the association, had not been wholly divested.

It is to be noted that we are not dealing in this case with the statutory provisions relating to counterclaims, nor with the strict doctrine of set-off as the same is encompassed within the statutory right to plead by way of counterclaim. But as the authorities hereinafter cited show, applicable equitable principles that derive their existence from judicial recognition of the dictates of natural justice are in a large measure a counterpart of the doctrine of set-off, and furnish a sound foundation upon which this case may be disposed of.

We adopt the approach to the problem that was taken by this Court in the case of *Peurifoy, Rec., v., Gamble, Rec.,* 145 S. C., 1, 142 S. E., 788, 791, 71 A. L. R., 783: "With the peculiar circumstances of the present case in mind, we ask ourselves the question, Would the relief asked for, if granted, produce an inequitable result?"

In this light we first recognize the elementary propositions that if at the time of the closing of the bank the notes of the association had been in the hands of the bank, or if after the closing of the bank, its obligations to the Reconstruction Finance Corporation had been paid without the collection of the notes of the association, so that the association notes were returned to the conservator with the other surplus collateral, there would be no question of the right of the association to set off its deposit against its obligation to the bank. Should the consideration that because of the circumstances entirely beyond the association's control, it was unable to raise the issue by way of plea, and has to raise it by way of affirmative action, militate against the association? Certainly that consideration does not affect the equities of its position.

The position of the conservator in this case necessarily is that solely because of the fortuitous circumstances that the notes of the association were among those which were collected by the Reconstruction Finance Corporation, the association loses all of the advantages to which admittedly under the law a depositor who is also a borrower is entitled. And this position of the conservator necessarily rejects as immaterial the consideration that if any of the debtors of the bank whose notes were returned to the conservator by the Reconstruction Finance Corporation have deposits in the bank, they will be entitled to offset their deposits against their liabilities as the result of the payments by the association and by other debtors of the bank in like situation of their liabilities.

And the contention of the conservator likewise overlooks the fundamental consideration that the payment by the association to the Reconstruction Finance Corporation augmented the assets in the hands of the conservator to the extent of such payment, to the prejudice of the association, and to the benefit of all other creditors of the bank, thus providing the fundamental factor upon which all preferences are founded in the distribution of the assets of closed banks.

Independently of the authorities it would appear that the considerations hereinabove stated should give the association the same rights against the assets in the hands of the conservator that it would have had if the necessity to pay its obligations to the bank had not arisen until after the surplus collaterals in the hands of the Reconstruction Finance Corporation had been paid.

In effect, the legal problem closely parallels that which was presented to this Court in the case of *Carwile v. Metropolitan Life Ins. Co.*, 136 S. C., 111, 134 S. E., 275. See additional case between same parties decided at same term: 136 S. C., 179, 134 S. E., 285. In that case it appeared that the Metropolitan Life Insurance Company had an arrangement with a financing concern under the terms of which the lat-

ter took mortgages on real estate, in its own name, to be immediately assigned to the insurance company, which provided the money for loans on the strength of the assigned securities. The arrangement between the parties further contemplated that the financing concern might pay out of its own funds delinquencies of principal and interest on the mortgages assigned by it, where such items were not paid by the mortgagors, and that whenever this was done, the financing concern was to have a junior lien on the respective mortgages in the hands of the insurance company, and on the proceeds of same, for the amounts so advanced by it.

One of such amounts advanced by the financing company to the insurance company was a mortgage installment of $1,800.00 due by a mortgagor whom we will call "A". The assignor of the mortgages became insolvent and a Receiver was appointed. "A" thereafter paid the whole of his mortgage debt, including the $1,800.00 item that had been advanced for his account by the financing concern and interest thereon, to the Metropolitan Life Insurance Company. Upon demand of the Receiver of the financing concern for reimbursement of this item of $1,800.00 and interest, the insurance company refused payment on the ground that the finance company (and therefore the Receiver) owed it a considerable sum of money at the time the Receiver was appointed.

The question in this case was whether or not the insurance company had the right to offset against the Receiver's admitted claim for the money paid by the finance company as above set forth, the indebtedness of the insolvent corporation to it.

The lower Court, applying the general rules respecting the necessity of mutuality of accounts at the time of the appointment of a Receiver for the insolvent party, rejected the claim of offset. This Court reversed such holding. The opinion of the Court points out that the fact that the insurance company did not receive the item in question until after the Receiver was appointed, and that there-

fore at the time of the appointment of the Receiver the requisite conditions to create a right of offset were not present "does not make a particle of difference, for the reason that the right to collect was vested in the insurance company by the contract; * * * and the collection after the appointment was referable to the original contract right." (136 S. C., 111, 134 S. E., 283.)

As this Court further said in the case cited:

"Even if there were a question of mutuality of the demands, it is well recognized that in equity a set-off does not have to meet the requirements for a counterclaim under the Code." (Citing authorities.)

"The Courts have uniformly applied the principle of equitable set-off with great liberality to prevent injustice even in cases where elements requisite to legal set-off have been lacking. * * *

"In addition to the plain equity of the insurance company, under ordinary circumstances, to set off its claim against the claim of the receiver, in considering the relative equities, the very fact of insolvency of a creditor against whom a set-off is claimed creates an equity permitting the set-off. * * *"

These equitable principles have been reiterated in later cases decided by this Court. *Elliott et al., Recs. v. Carroll et al.*, 172 S. C., 276, 173 S. E., 908; *Brown et al., Recs. v. Lowe et al.*, 182 S. C., 9, 188 S. E., 182.

It is true that these cases, like those of *Carwile v. Metropolitan Life Insurance Company, supra*, were actions at law, and that much that is said thereon on the subject of the application of equitable principles is under the facts of the cases pure dicta, but it is likewise true that the doctrine with which we are dealing is equally applicable at law and in equity. The question in each case is not dependent upon the forum in which it arises, but is whether or not the facts of the case give rise to such equitable considerations as call for the application of the doctrine, to prevent injustice.

Except to the extent that the problem is affected by the *Carwile cases, supra*, the question presented in this case has

not heretofore come before this Court. It has arisen rarely in other jurisdictions, and the decided cases are not in harmony. The cases supporting the conclusion that the claim of the petitioner presents a situation in which a preference should be allowed are in accord with what we believe to be the sounder view. See *Seymour et al. v. Becker,* 71 Minn., 394, 73 N. W., 1096; *Hall v. Burrell,* 22 Colo. App., 278, 124 P., 751; *Powell v. Hood, Com'r,* 211 N. C., 137, 189 S. E., 483.

The writer of this opinion is aware of the fact that in quoting from the case of *Ellerbe v. Studebaker Corporation of America,* 4 Cir., 21 F. (2d), 993, in the opinion written by him in the case of *Elliott v. Flynn Bros.,* 184 S. C., 391, 192 S. E., 400, he quoted a dictum that is not entirely in accord with the foregoing discussion. But the quotation of that dictum had no bearing on the disposition of the case before the Court, nor did it have in the disposition of the case in the Federal Court. The facts of both cases were very different from those involved in the present case.

The conclusions hereinbefore expressed apply to the full amount paid by the association to the Reconstruction Finance Corporation to the extent of appellant's net deposit. The interest included in such amount stands on precisely the same basis as the principal. But we do not think that, under the equitable considerations upon which we are proceeding, the association is entitled to collect interest on any part of the fund paid by it to the Reconstruction Finance Corporation. The requirement of paying interest contemplates an agreement, express or implied, to pay for the use of the money of another. It is not suggested that the bank or its conservator can be charged with any degree of responsibility of the fact that it happened that payment of the notes of the association, and of others in its class, was required before other classes of securities could be liquidated; and although it is true that as the result of the payment by the association of its notes, the amount of interest which the conservator was thereafter required to pay the Reconstruction Finance Corporation on the obligation of the

bank was reduced, it does not appear to us that this circumstance is sufficiently strong to create an affirmative liability for interest on the part of the bank's assets, with a consequent depletion of the assets available for distribution to other depositors. In this respect the payment made by the association to the Reconstruction Finance Corporation is placed by us in the same category as the deposit of the association, upon which admittedly no interest could be claimed if the complicating equities of the present situation had not arisen.

It is the judgment of this Court that the decree of the Circuit Court be reversed, and the case remanded for the entry of judgment in favor of petitioner-appellant in accordance with the rulings herein made.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DEWEY OXNER concur.

MR. CHIEF JUSTICE BONHAM (dissenting):

I find myself out of agreement with the main opinion in this case, written by Mr. Associate Justice Baker.

The whole spirit of the leading opinion is that the appellant is entitled to the offset it claims, under the liberal principles of equity.

The appellant, in its brief, states the question for determination by the Court as follows: "Did the Mechanics Federal Savings and Loan Association, indebted by notes to the insolvent Central Union Bank, which said association was a depositor of the bank, lose its right of set-off because, before insolvency, the bank had pledged and hypothecated the association's notes with the Reconstruction Finance Corporation to secure a debt which the bank's conservator paid in full?"

That statement does not seem to me to embrace all that is embodied in the question to be decided by the Court. The respondent, in his argument, states this: "Appellant's statement at page 5, folio 17 of its argument of the 'Question for Determination', seems to us inaccurate, in that it fails to in-

clude the facts that the said notes were negotiable promissory notes, were pledged to the Reconstruction Corporation in due course before maturity, without notice of any defect therein or defense thereto, for an amount greatly exceeding the amount of said notes; were paid by appellant to the Reconstruction Finance Corporation on its demand; were never returned to the pledgor, and that the bank's notes to the Reconstruction Finance Corporation were collected by it from its pledged collateral."

The facts of this case are fully stated in the record, and may be thus summarized: The appellant, The Mechanics Federal Savings and Loan Association of Rock Hill, South Carolina, is a corporation under the laws of the State of South Carolina; that at the times hereinafter mentioned the Central Union Bank of South Carolina was a corporation, organized under the laws of the State of South Carolina, which closed its doors as a going concern on March 4, 1933; that Simpson J. Zimmerman was appointed conservator of the said bank and is now acting in that capacity; that at the time of the closing of its doors, The Mechanics Federal Savings and Loan Association, which we may hereafter call the association, had on deposit in said bank the sum of $13,-953.55; that while the said bank was a going concern, the association made and delivered to it, its three negotiable promissory notes, payable to the bank, aggregating the sum of $14,827.45; that at the time of the closing of said bank, it was indebted to the Reconstruction Finance Corporation, for money borrowed of said corporation, in an amount exceeding one million dollars, and the bank had pledged with said corporation the notes of this association, along with notes of other debtors of the bank, of like nature and import, as collateral security; that when the notes of the said association fell due, they were voluntarily paid by it to the Reconstruction Finance Corporation, and the notes were cancelled and surrendered to the conservator-receiver of said bank along with other collateral which was not collected or applied on its debt by the said pledgee; that the value of the collateral

so returned exceeds the amount of the claim of The Mechanics Federal Savings and Loan Association of Rock Hill, and of others claiming preference out of said returned collateral; that the total assets of the said bank, pledged and unpledged, are insufficient to pay in full the claims of the deposits and creditors of the bank, irrespective of whether preference be allowed on the petitioner's claim, or on other like claims, and that the allowance and payment of the claimant's claim as a preference would diminish the percentage which the other creditors and depositors in the said bank will otherwise receive. It also appears from the record that a total of $4,186.07 has been paid to the association, in dividends, by the conservator of the bank.

It seems to me that the question really to be decided is more accurately stated in the brief of the respondent, as follows:

"1. Where one having a deposit in a bank which has failed, had previously issued his note payable to said bank, which as a going concern, thereafter in due course for value endorsed and delivered said note before maturity to another bank, which took same as collateral security for a present loan made to the pledgor bank by the pledgee bank, and which note the pledgee bank thereafter duly collected from the maker who paid under protest, said note never having been redeemed by the pledgor, whether under such circumstances said depositor has any right after said pledge or after such payment of his note to offset his deposit against said note; or does such pledge or such payment, either or both, preclude and destroy the right of set-off which the depositor would have had if his note had remained the property of the payee-pledgor bank at the time of its insolvency, and had not been so endorsed and delivered to the pledgee and collected by it?

"2. The question may be otherwise stated as follows: Did the voluntary payment by the association to the Reconstruction Finance Corporation, as pledgee-holder in due course

of the association's negotiable promissory notes theretofore given by the said association, payable to the order of the Central Union Bank, extinguish the life of the said notes and render them thenceforth unavailable as obligations of the said association (as an asset of the original pledgor bank-payee) against which said association can interpose by way of offset the claim which it had against the Central Union Bank (arising out of a deposit balance) at the time of the payment to the said Reconstruction Finance Corporation of said notes so given by said association?"

As I have heretofore said, the main opinion predicates its holding upon the plea of equity. To my mind, such holding violates the principles of equity as established and followed by this Court.

That eminent jurist, Mr. Justice Woods, of this Court, afterward a Justice of the Fourth Circuit, United States Court of Appeals, in the case of *Livingstain v. Columbian Banking & Trust Company*, 77 S. C., 305, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, had this to say:

"* * * the issue here is not between the petitioners and the Bank of Commerce or the Columbian Bank as a solvent institution, able to pay all creditors, but it is between the creditors of the Columbian Bank, an insolvent institution, and the petitioners, who are claiming a preference in the distribution of the assets.

"No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors. Against this equity there is no principle of subrogation which can avail petitioners."

That statement of the eminent jurist has become a canon of the law in South Carolina, and I think the ruling of the main opinion runs counter to this established rule of equity, because in my opinion the showing made for the petitioner does not disclose any special equity which entitles it to pref-

erence over the claims of others who are the creditors and depositors of the defunct bank.

The notes of the association to the bank were promissory negotiable notes, and were pledged by it in due course to the Reconstruction Finance Corporation. When they fell due, they were cancelled by the Reconstruction Finance Corporation, and were returned not to the association, but to the bank. The association had received from the bank cash for those notes, so that when the notes were paid by the association to the Reconstruction Finance Corporation, they were relieved from this liability.

It is patent from the record: "That the total assets of the said bank pledged and unpledged are insufficient to pay in full the claims of the deposits and creditors of the said bank, irrespective of whether preference be allowed herein, or in other like claims and that the allowance and payment of the claimant's claim as a preference would diminish the percentage which the other creditors and depositors in the said bank will otherwise receive."

The petitioner in this case is not seeking to offset its obligation on the notes with its deposit, but it is seeking to have the application of the funds of the bank, represented by the surplus collateral returned to the bank, paid on its claim in preference to its payment of other like deposits and claims.

I cannot see in this case any grounds for preference in this claim over other depositors and creditors of the bank. The association has been paid in dividends by the conservator-receiver of the bank the sum of $4,186.07.

The petitioner founds its claim against the conservator-receiver upon the doctrine of set-off. It does not need authorities to show that that doctrine applies only when there are mutual accounts between the parties. Mutuality is the very foundation of the right of set-off. In the case of *Peurifoy, Receiver, v. Gamble, Receiver,* 145 S. C., 1, 142 S. E., 788, 791, 71 A. L. R., 783, Mr. Justice Stabler said: "* * * the general rule in equity, as well as at law, is that the de-

mands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. * * *"

The rights of all the parties in question were fixed the day the bank closed. In the case of *Bank of Anderson v. Allen et al.,* 146 S. C., 167, 143 S. E., 646, 647, 60 A. L. R., 580, this Court said: "It is the general rule that the right to set-off against an insolvent bank has to be governed by the state of facts existing at the time of insolvency and not by the conditions that might be created afterwards. * * *".

In this same connection, see also the case of *Peurifoy, Receiver, v. Continental Finance Company (Rice v. City of Columbia),* 164 S. C., 261, 162 S. E., 458.

In the present instance, I do not think there is any such claim.

It passes my comprehension that the appellant has a claim against the bank, or against the conservator-receiver of the bank, because the petitioner had borrowed from the bank some $14,000.00, and had paid said notes in full to the party to whom the bank had pledged them, namely, the Reconstruction Finance Corporation. The notes are now paid, and they were paid to the assignee of the bank, and were extinguished. They were paid because the petitioner had borrowed that money from the bank. By what process of reasoning or logic can it be claimed that they may now offset those notes against their deposits?

As a matter of fact, there is no question of offset, but they are claiming a preferment in the application of the assets of the bank.

At page 223, Section 163, of 3 Michie on Banks and Banking appears the following statement: "All preferences should be resisted by the public authorities, and except where statutory, should be disposed of by the Court on the principle that equality is equity."

I cannot, in view of these facts, concur in the opinion that the petitioner is entitled to preference in the payment of its claim. Therefore, I must dissent.

I think the decree of the Circuit Judge ought to be affirmed.