**BERNHEIMER v. FIRST NAT. BANK OF BEVERLY HILLS et al.\***

No. 7592.

Circuit Court of Appeals, Ninth Circuit.

May 20, 1935.

*Rehearing denied Sept. 6, 1935.

Joseph P. Loeb, Irving M. Walker, Edwin J. Loeb, and Herman F. Selvin, all of Los Angeles, Cal., for appellant.

Rollin L. McNitt, of Los Angeles, Cal., for appellee First Nat. Bank.

R. M. Fulton and John M. Fulton, both of Los Angeles, Cal., for appellee Taylor and others.

Edythe Jacobs, of Los Angeles, Cal., for other appellees.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

GARRECHT, Circuit Judge.

The First National Bank of Beverly Hills, appellee, has been and is now a national banking association organized under the laws of the United States and authorized to do a trust business under the laws of the United States and of the state of California. Said bank, up to and including June 3, 1932, operated and conducted a general banking business in the city of Beverly Hills, Cal. Said bank was authorized to act as trustee, executor, administrator, and in other fiduciary capacities agreeable to the laws of the state of California, pursuant to which it conducted a departmental bank, consisting of a Commercial department and a Trust department, said departments being operated separately from each other. On and prior to February 6, 1931, and thereafter to and including June 3, 1932, the said bank was the duly appointed and acting trustee of divers and sundry trusts, including Participation Trust No. 1005, series 1 to 31, herein referred to as "Participation Trust," and including the Private Trusts Nos. 1059 and 1060, hereinafter referred to as "Taylor Trusts," and said bank held and administered all of said trusts.

Nellie Euretta Taylor, appellee and intervener, on March 16, 1932, became and now is the beneficiary of said trust No. 1059 and on said date became entitled to trust estate No. 1060, as the owner thereof.

In certain proceedings had in the superior court of the state of California the First National Bank of Beverly Hills was discharged as trustee under said trusts Nos. 1059 and 1060 and appellee-intervener, Security National Bank, was empowered and directed to further execute said trust No. 1059 and appellee-intervener, Bank of America National Trust & Savings Association, was empowered and directed to further execute trust No. 1060.

On December 31, 1931, appellant, Bernheimer, executed his negotiable promissory note in the sum of $30,000, payable on or before three years from date to the said First National Bank of Beverly Hills. The note was secured by deed of trust on real property in Los Angeles county, Cal. On or about February 8, 1932, the proceeds of the said note in the net amount of $29,887.85 were deposited in the Beverly Hills

Bank. Upon said deposit being made, there was a total credit balance in appellant's account at said bank in the sum of $41,762.05, which amount was subject to appellant's right of withdrawal in whole or in part upon demand. No subsequent deposits were made, but appellant from time to time checked against and withdrew from said account various sums, reducing the balance to appellant's credit at the time the bank suspended on June 3, 1932, to $31,528.93.

Appellant, in the amended complaint, after alleging the execution of the promissory note and deed of trust and matters relating to the deposit, alleged that "On or about, but prior to, the date of delivery of the above mentioned note and trust deed and the making of said deposit, an oral agreement was entered into by and between plaintiff and defendant banking association, whereby it was agreed that defendant banking association would hold said note until paid and would not transfer or assign or negotiate it to any person or persons; that the money which plaintiff would receive as a loan from said banking association upon the execution of said note and trust deed would be deposited in said banking association by plaintiff and would at all times, and as long as such money remained on deposit with said banking association, be and be deemed to be a set-off against the principal and interest provided for in said promissory note."

The answer of the Beverly Hills Bank and the receiver denied any knowledge of the making of the alleged agreement and set-off. It was also alleged that the note had been transferred to the trust department of the bank, where it had been set up in a participation trust, pursuant to section 104 of the California Bank Act (Deering's Gen. Laws Cal. 1931, act 652). The bills in intervention of the other appellees set forth in detail the creation and existence of the Taylor Trusts, and the issuance to the trustees thereof of participation certificates in the participation trust set up in respect of plaintiff's note and asked the court to adjudicate that said note was not subject to set-off.

At the trial appellant offered to prove by witness Nolan, who was chairman of the board of directors of the bank, that some time in the month of December, 1931, and prior to the execution of the note and trust deed involved in this action, said bank official had a conversation with a Mr. James O. Moore, who was the properly authorized agent of appellant for the purpose, concerning a loan of $30,000 by the bank to appellant; that Mr. Moore had stated to Mr. Nolan that Mr. Bernheimer desired that the bank hold the note and not transfer or assign it so long as Mr. Bernheimer kept the amount of the loan deposited in the bank; that Bernheimer wanted the money deposited in his commercial account in the bank, and in the event he did not use the money, it could be repaid by him at any time by applying the deposit; that the chairman of the board of directors stated that the bank would be glad to make such a loan; that the note and trust deed would be held by the bank at all times and would not be transferred or assigned to any one, and that the money which was deposited in Mr. Bernheimer's account could at any time be applied to the payment of the loan before maturity thereof; that at about the same time the president of the bank was informed of the agreement and he said, "that would be satisfactory and the bank would make the loan in that way"; and that subsequently the written instruments were drawn and the loan was made. Upon objection made by appellees, this offer of proof was rejected by the court.

The evidence shows that on or about February 23, 1932, the Bernheimer note was transferred, without appellant's knowledge, from the commercial or banking department to the trust department of said bank. The transfer was effected without indorsement or written assignment and solely by manual delivery, and thereafter the note and trust deed were kept in the possession of the trust department of the bank. On the face of the note were placed the figures "1005/31," which figures represented the number of the Participation Trust in the trust department into which the Bernheimer note and trust deed were placed as assets of said trust.

On the same day that Participation Trust No. 1005/31 was created, a certificate therein in the sum of $2,000 was issued to Taylor Trust No. 1059 and a check drawn on the funds of that trust in payment. At the same time a certificate in the sum of $4,200 was issued to Taylor Trust No. 1060 and paid for by a check drawn on the funds of that trust. Similarly, there was issued to the Beverly Hills Bank a certificate for the balance of the Bernheimer note—$23,800. This last certificate and the two

checks of the Taylor Trusts were delivered to the commercial department of the Beverly Hills Bank.

From time to time, after February 23, 1932, additional participation certificates were issued and sold to the Taylor Trusts Nos. 1059 and 1060. These additional certificates were issued from portions of the certificate held by the commercial department of the bank and were purchased from that department with the private trust funds.

At the time of suspension, there were outstanding the following certificates:

| | |
|---|---:|
| Taylor Trust No. 1059 | $21,000.00 |
| Taylor Trust No. 1060 | 7,900.00 |
| First National Bank of Beverly Hills | 1,100.00 |
| Total | $30,000.00 |

The certificates issued to the Taylor Trusts at all times remained in the possession of the trust department of the First National Bank of Beverly Hills until the successor trustees, interveners herein, were appointed. Thereafter said certificates were kept in possession of the respective trustees.

Appellant's demand for set-off was made after suspension of said bank and prior to the commencement of the action herein. The decree, in addition to denying relief sought by plaintiff, awarded attorneys' fees to the interveners.

The questions involved are: (a) Is a depositor in a national bank, which has become insolvent, entitled to set off his deposit against his indebtedness to the bank, notwithstanding that prior to insolvency the promissory note representing the indebtedness was transferred, without the depositor's knowledge, and without indorsement or written assignment, to the bank's trust department, where fractional participation certificates in the proceeds of the note were sold to various private trusts of which the bank was trustee? (b) In such a case, when, if at all, may the depositor prove an oral agreement by the bank to allow such a set-off upon the depositor's demand? (c) When the payee of a promissory note, containing a provision for attorneys' fees in the event of suit thereon, declares a trust in respect thereof, may the beneficiaries of such trust avail themselves of the attorney's fee provision in a suit involving the note?

The general rule that a depositor in a national bank is entitled, upon the bank's insolvency, to offset his deposit against his indebtedness to such bank is not here in dispute. The appellees contend that the facts of this case, under the laws of California and of the United States, work a qualification or exception to this rule and the lower court so held.

Before entering upon a consideration of this main question, it is necessary to dispose of appellant's specification of error made to the ruling of the District Court sustaining appellees' objection to the admission of the proffered evidence hereinbefore set out. The amended complaint alleges, as the offer of proof recites, that an oral agreement was had prior to the making of the loan, whereby the negotiable promissory note was not to be transferred so long as the amount thereof was kept on deposit by plaintiff, and that subsequently thereto the written instruments were executed and the loan made. The ruling of the court excluding this evidence was correct. Such offer violated well-established principles of evidence. The authorities are practically unanimous that oral testimony will not be received to vary the terms of the written instrument. Section 1625 of the California Civil Code provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

It is likewise a rule of evidence that extrinsic agreements "not to transfer" a negotiable note are inadmissible. Wigmore on Evidence (2d Ed.), vol. 5, § 2445, states the rule as follows: "(1) An extrinsic agreement *not to transfer* an instrument payable 'to order' cannot be effective; for the term 'to order' imports negotiability, and there is no purpose which the term could serve if that element were discarded." (Italics author's.)

Appellant's argument that the president and chairman of the board of directors of appellee bank had authority to make the oral agreement as claimed in the offer of proof is without merit. In the case of New England Nat. Bank & Trust Co. v. Hille, 152 Okl. 185, 4 P.(2d) 42, 45, the court said: "It is likewise against the public good and contrary to public policy to permit officers of a bank, by secret agreements, to restrict notes held as assets of

the bank so as to change a note, negotiable in form, to one not negotiable in its hands, and thus destroy their use in the ordinary course of business. If the officers may do this as to one note, they could do it as to all, and thus have all its notes negotiable in form and yet be powerless to discount them when it would be to the advantage of the bank to do so, and when, by reason of unusual demands made upon the bank, it would be in most pressing need of cash."

█ Concerning the main question of set-off, it is a well-recognized principle that where parties dealing together become mutually indebted, the balance only is recoverable. However, instances may arise where, under unusual circumstances, this ordinary doctrine is not applied.

Some courts have held that in the absence of statute the shifting of a note from one department of a bank to another would not destroy the right to set-off which the borrower might have, and the cases cited by appellant are to that effect. Taylor v. Arkansas Democrat Co. (1932) 186 Ark. 343, 54 S.W.(2d) 59; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059.

█ That title to a negotiable instrument payable to order may be passed by mere delivery is conceded, but appellant contends that such transfer from one department of a bank to another department of the same bank does not carry with it any of the privileges of negotiation in the absence of the endorsement thereof. As the instrument is already payable to the bank, there exists no logical reason for the mere formality, particularly where, under section 1052 of the California Civil Code, "A transfer may be made without writing, in every case in which a writing is not expressly required by statute." There being no requirement by statute that a negotiable promissory note can be transferred only by writing, it has been held that the title can be passed by delivery. Edwards v. Wagner, 121 Cal. 376, 53 P. 821. The transfer under the circumstances of the case at bar was in effect the negotiation of the note, and the trust department of the bank was the holder in due course. The statute providing for such banking practice and the form of participation certificates approved by the superintendent of banks for the state of California requires the construction here given.

Section 104 of the State Bank Act (Deering's General Laws of California (1931) vol. 1, p. 293, Act 652) provided: "Participation certificates. Any trust company may issue participation certificates approved as to form by the superintendent of banks on a trust deed or mortgage and the debt secured thereby which is a legal investment for savings banks, and which is owned by such trust company or by any department of a departmental bank of which such trust company is a department; *and said trust company shall issue said certificates to the department owning such trust deed or mortgage and debt,* and the department owning and holding any such participation certificates may sell and transfer the same to any department of the bank or to any trust or trusts administered by it and be held therein, anything in this act to the contrary notwithstanding. *Any trust company, the whole or any part of the capital stock of which is owned by a departmental bank, shall, for the purposes of this section, be deemed a department of such bank, and shall have the right to sell to such bank any such participation certificate and to buy from said bank any such certificate for itself or for any trust or trusts administered by it.* The amount of participation certificates issued and outstanding at any time shall not exceed the face value of the trust deed or mortgage and debt upon which the same are predicated." (Italics ours.)

In 1933, for the express purpose, as declared in said act, "to define and clarify the rights and obligations of trust companies and of all persons and trusts interested in participation certificates issued under subsection (a) of this section, whether heretofore or hereafter issued," (section 104 (d) the Legislature of California added to section 104 of the said Bank Act (Deering's Supp. 1933, p. 1124) the following paragraph: "(b) *Holding security in trust. The full legal title in such trust deed or mortgage and debt* (hereinafter referred to as security) *shall be held by the trust company issuing such certificates as trustee of an express trust, with all powers necessary to extend, renew, enforce, collect and liquidate the same,* acquire title to the property covered thereby either through foreclosure or by voluntary conveyance; manage, lease, sell (either for cash or upon deferred payments), exchange, or otherwise realize upon such security or property and distribute the net

proceeds thereof. *All sums so realized shall,* as and when received by said trustee, after payment of its compensation and all costs, charges and expenses, including brokers' commissions and advances for taxes and assessments, incurred or made in connection with the protection, administration and liquidation of said security or property, *be distributed to the trusts or persons who are beneficiaries of said trust, as their interests may appear therein.* The rights and interests therein of any such beneficiary failing to contribute on demand its or his *pro rata* of sums advanced, expended or required by said trust company in the protection, administration or liquidation of such trust shall be subject to a lien for all sums, with legal interest thereon, advanced, expended or required for any of such purposes by such trustee or by any other beneficiary of such trust." (Italics ours). From these statutes it would appear that no endorsement is required in negotiating a note and trust deed from the commercial to the trust department of a bank.

Where the note has been transferred in compliance with the provisions of a statute to the trust department of a bank and set up in that department as a trust, and funds and assets of the trust department passed to the commercial department therefor and certificates of participation based on the trust so established are issued to other third parties whose funds were invested therein, the maker of the note so transferred before maturity is not entitled to offset his deposit in the commercial department of the bank. In these circumstances the rights of third parties have arisen and will prevail over a set-off which otherwise might exist.

So here appellant's negotiable note and trust deed having been transferred from the commercial to the trust department of the bank and there deposited in a separate trust account against which the trust department issued "participation certificates," intervening rights in the beneficiaries of the Taylor Trusts were created which prevent appellant's deposit being set off against such note. Bassett v. City Bank & Trust Co., 115 Conn. 1, 160 A. 60, 81 A. L. R. 1488; Dole v. Chattabriga, 82 N. H. 396, 134 A. 347; Lippitt v. Thames Loan & Trust Co., 88 Conn. 185, 90 A. 369; Upham v. Bramwell, 105 Or. 597, 209 P. 100, 210 P. 706, 25 A. L. R. 919; Cosmopolitan Trust Co. v. Rosenbush, 239 Mass. 305, 131 N. E. 858, 16 A. L. R. 1484; Cosmopolitan Trust Co.

v. Leonard Watch Co., 249 Mass. 14, 143 N. E. 827; Tremont Trust Co. v. C. H. Graham Furniture Co., 244 Mass. 134, 138 N. E. 330; Kelly v. Allen, Commissioner of Banks, 239 Mass. 298, 131 N. E. 855; Tremont Trust Co. v. Baker, 243 Mass. 530, 137 N. E. 915; Bachrach v. Allen, Commissioner of Banks, 239 Mass. 272, 131 N. E. 857; Bailey v. Allen, Commissioner of Banks, 244 Mass. 499, 138 N. E. 915; Bieringer-Hanauer Co. v. Cosmopolitan Trust Co., 247 Mass. 73, 141 N. E. 566.

There is a provision in the trust deed to the effect that the trustor (appellant) would pay attorneys' fees in any action affecting the security of said trust deed to which the beneficiary or trustee was a party. The District Court allowed interveners attorneys' fees, the reasonableness of which are not questioned. In view of the provisions of the contract, the court committed no error in making the award.

Decree affirmed.