379 F.2d 660
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of San
Francisco National Bank, Appellant,
v.
MADEMOISELLE OF CALIFORNIA, a Co-Partnership, Edward Wieger
and Ruth Carlson, Individually and as Co-Partners doing
business under the firm name and style of Mademoiselle of
California, Nancy Wieger, Wendell R. Carlson, and Union
Bank, a Corporation, Appellees.
 No. 21375.
 United States Court of Appeals Ninth Circuit.
 June 6, 1967.
 
 Charles A. Legge, Alan I. Kaplan, Bronson, Bronson & McKinnon, San Francisco, Cal., John F. Lee, Leslie H. Fisher, FDIC, Washington, D.C., for appellant.
 LeRoy Hersh, Hersh & Hadfield, San Francisco, Cal., for appellee, Mademoiselle of Calif. and others.
 William T. Doyle, Doyle & Clecak, San Francisco, Cal., for appellee, Union Bank.
 Before JERTBERG and MERRILL, Circuit Judges, and TAYLOR, District judge.
 JERTBERG, Circuit Judge:
 
 
 1
 This is an appeal from summary judgment in favor of appellees, Mademoiselle of California (hereinafter Mademoiselle) and Union Bank (hereinafter Union). Appellant, as receiver of San Francisco National Bank (hereinafter SFNB), brought this declaratory judgment action to determine 1) whether Mademoiselle is entitled to set off its deposit in account with SFNB against a note due SFNB, and if so 2) whether Union, as holder of an 80% Participation interest in that note, is entitled to a preferred claim for 80% Of the set-off. We affirm as to Mademoiselle and reverse as to Union.
 
 
 2
 The district court made findings of fact as follows:
 
 
 3
 On July 31, 1964, Mademoiselle, a co-partnership of appellees Edward Wieger and Ruth Carlson, borrowed $60,000 from SFNB and executed a promissory note in that amount. Appellees Wieger and Carlson Guaranteed the note.
 
 
 4
 On November 9, 1964, SFNB sold and assigned to Union an 80% Interest in said note. The principal of the note had been reduced to $58,000 by previous payments, so that Union's participation amounted to $46,400. Mademoiselle was not notified of this assignment at any time prior to the date SFNB was declared insolvent.
 
 
 5
 On January 22, 1965, the Comptroller of Currency declared SFNB insolvent and appointed appellant as receiver of SFNB. On that date, Mademoiselle had a commercial account at SFNB with a balance of $7,473.01. Mademoiselle's outstanding balance due on its promissory note exceeded that amount.
 
 
 6
 On that date Union was and now is entitled to 80% Of such deposit.
 
 
 7
 On the basis of these findings, the district court concluded that there was no genuine issue of material fact and that, as a matter of law, Mademoiselle was entitled to set off the deposit against the note and that Union was entitled to a preferred claim against the assets of SFNB for 80% Of the deposit.
 
 
 8
 In addition to the foregoing findings and conclusions, the record discloses that the note was made payable on demand or on July 31, 1965. The note remained in the hands of SFNB, and Mademoiselle continued to make its payments on the note to SFNB after the assignment of the 80% Interest to Union. The terms of the participation certificate held by Union are set out below.[1]
 
 
 9
 (CHART OMITTED)
 
 
 10
 * The distribution of the assets of a national bank declared to be insolvent is governed by 12 U.S.C. 194, part of the National Bank Act. That section provides in pertinent part:
 
 
 11
 '* * * the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; * * *.'
 
 
 12
 Under the statute, the allowance of claims against the assets is a matter of federal law. American Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941). As the Supreme Court noted in that case, 'Congress has seen fit not to anticipate by specific rules solution of problems that inevitably arise in national bank liquidations. Instead, it chose achievement of a 'just and equal distribution' of an insolvent bank's assets through the operation of familiar equitable doctrines evolved by the courts.' 314 U.S. at 316, 62 S.Ct. at 228.
 
 
 13
 Though the right of set-off did not exist at common law, equity has long recognized it. Clark, Set-Off in Case of Immature Claims in Insolvency and Receivership, 34 Harv.L.Rev. 178, 179 (1920). A common application of set-off occurs when a depositor is indebted to his bank, the bank is declared insolvent, and the depositor's account balance is set off against his indebtedness to the bank. See 3 Clark on Receivers 661(d) (3rd ed. 1959). Such a set-off is allowed under the National Bank Act, so that only the balance of the debt after set-off is considered an asset of the insolvent bank. Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892). The claim of Mademoiselle in our case would come squarely within that rule were it not for the sale and assignment to Union of the 80% Participation in Mademoiselle's promissory note.
 
 
 14
 Appellant argues that the partial assignment to Union deprives the debts between Mademoiselle and SFNB of their mutuality. While it is generally true that a separate debt cannot be set off against a joint demand, insolvency may give rise to circumstances that work against the strict application of that rule. The usual case is one in which the depository bank pledges the depositor's note to another bank as collateral for the depository bank's own note. Subsequently, the depository bank becomes insolvent. If the receiver then pays off the depository bank's note and receives back the depositor's note, the depositor is entitled to set off his deposit against his note. Clute v. Warner, 8 App.Div. 40, 40 N.Y.S. 392 (1896). Or if the depositor pays the pledgee directly, he is then entitled to full repayment from the receiver in the amount of his deposit. Hall v. Burrell, 22 Colo.App. 278, 124 P. 751 (1912). As was stated by the court in People ex rel. Nelson v. Bank of Harvey, 273 Ill.App. 56 (1933):
 
 
 15
 'It has long been the settled rule that a depositor indebted to a bank which is closed on accout of insolvency, may reduce his indebtedness by setting off his deposit. There is no controversy as to this rule of law, but the receiver contends that when the Bank of Harvey pledged the promissory notes, including the petitioner's to the First National Bank as collateral, to secure the payment of its indebtedness to the First National Bank, the notes passed to and became the property of the First National Bank, and that since they were possessed and owned by the First National Bank at the time the Bank of Harvey failed, the petitioner, who subsequently paid his note to the First National Bank, was not entitled to have the note reduced by setting off his deposit.
 
 
 16
 ' * * * *.is
 
 
 17
 '* * * in the case at bar a number of the makers of the pledged notes were allowed to set off the amount of their deposits in reduction of their respective notes. And we think the fact that petitioner had paid his note to the First National Bank, while makers of others of the pledged notes had not done so, ought not to prejudice him. * * * But the equities of the case are that when petitoner paid $5,000 to the First National Bank, the indebtedness of the Bank of Harvey to the First National Bank was thereby reduced by $5,000, which necessarily increased the assets of the Bank of Harvey the same amount.
 
 
 18
 'Petitioner having by his payment of $5,000 increased the assets of the bank in the hands of the receiver to that amount ought in equity and good conscience, under the law, to be allowed the amount of his deposit at the time the bank closed.' 273 Ill.App. at 58, 59-60.
 
 
 19
 To the same effect, see Becker v. Seymour, 71 Minn. 394, 73 N.W. 1096 (1898). The fact that the note is pledged does not deprive the depositor of his right to a set-off.
 
 
 20
 Appellant cites Plante v. M. Shortell & Son, 92 N.H. 38, 24 A.2d 498, 139 A.L.R. 1325 (1942), in support of his contention that the debts lack mutuality. In that case the creditor was suing for rent and served trustee process on the bank where the defendant had his account. Defendant was also the maker of a note held by the Reconstruction Finance Corporation. The trustee purchased a 50% Participation in this note and then sought to set off that participation against the defendant's deposit to avoid the creditor's claim against it. The court disallowed the set-off because the debts were not mutual, since the note was due jointly to R.F.C. and the bank.
 
 
 21
 Plante is a normal application of the mutuality requirement for the equitable remedy of set-off. But that case did not involve the insolvency of the defendant, and there was no showing or claim that the indebtedness sought to be set off would not be fully paid. In our case, however, the insolvency of SFNB raises those inequities. 'It is well settled that the insolvency of a party against whom a set-off is claimed constitutes a sufficient ground for the allowance of a set-off not otherwise available.' People v. California Safe Deposit & Trust Co., 168 Cal. 241, 141 P. 1181, 1185, L.R.A.1915A 299 (1914).
 
 
 22
 Appellant also cites Bernheimer v. First National Bank of Beverly Hills, 78 F.2d 139 (9th Cir. 1935). In that case, a depositor in the bank borrowed from the bank and gave his note on the loan. The note was transferred for value to the bank's trust department. The trust department then sold participation certificates in the note to several private trusts for value. The bank was declared insolvent shortly thereafter. The depositor sued to obtain a set-off of his deposit against the amount due on the note. The court held he was not entitled to the set-off because the rights of third parties, the trust beneficiaries, had arisen and prevented the set-off.
 
 
 23
 But in Bernheimer, the transfer of the note and the sale of the participation certificates were both made according to a state statute providing specifically for this type of arrangement by trust departments of banks and for the distribution of any proceeds to the beneficiaries of the private trusts. The equities raised by compliance with the state statute outweighed the ordinary equities in favor of the depositor arising from the bank's insolvency.
 
 
 24
 In the present case, there are additional equities in favor of Mademoiselle's claim to a set-off. Although the certificate of participation gives no indication as to its legal consequences and enforceability in this type of situation (see footnote 1, supra), it is referred to in appellant's complaint and in Union's findings of fact as an assignment. As assignee of part of the claim, Union takes it subject to any counterclaims and defenses against it. Therefore, the assignment does not operate to defeat the maker's claims against the assignor, especially since Mademoiselle was never notified of the assignment and continued to make its payments on the note directly to SFNB, and since SFNB retained possession of the note. So far as Mademoiselle was concerned, the note was due solely to SFNB, and the unannounced transfer of an interest or sale of a participation certificate in the note should not dilute the uninformed depositor's ordinary right of set-off.
 
 II
 
 25
 Union seeks to establish a preferred claim against the assets of SFNB for 80% Of the set-off allowed Mademoiselle. There are no preferences, as such, provided for in the statute itself. See 12 U.S.C. 194, supra. However, a direct recovery against the receiver in preference to the general pro rata distribution of assets 'is authorized in situations where the facts are such that the court must say in equity that the property is not that of the bank but that of the claimant.' John L. Walker Co. v. Alden, 6 F.Supp. 252, 267 (E.D.Ill. 1934). In establishing a preferred claim against the bank's assets, the claimant 'has a heavy burden of proof, and unless he clearly and certainly identifies the fund he must fail.' Converse Rubber Co. v. Boston-Continental Nat'l Bank, 12 F.Supp. 887, 893 (D.Mass. 1935), aff'd,87 F.2d 8 (1st Cir. 1936). Thus, Union must be able to identify a specific fund or payment in the possession of the receiver cognizable in equity as Union's own property.
 
 
 26
 Union argues that as assignee of an 80% Interest in the note, Union stands in the shoes of the assignor and is thereby subrogated to SFNB's claim of a banker's lien against Mademoiselle's deposit.
 
 
 27
 An assignment of payments to be made in futuro, usually in the form of accounts receivable, is held to pass legal title in the proceeds to the assignee. Ramsey v. Marlin Firearms Corp., 14 F.2d 314 (D.Conn. 1925). The assignor becomes a collection agent for the assignee so that upon the insolvency of the assignor, the proceeds of the accounts in the hands of the receiver are the property of the assignee. Estes v. E. B. Estes & Sons, 24 F.2d 756 (D. Mass. 1927).
 
 
 28
 This general principle also applies to the sale of a promissory note by a bank. In Noll v. Harrison County Bank of Bethany, 11 S.W.2d 77 (Mo.App., 1928), the note was sold by the bank to its directors. The bank became insolvent shortly thereafter and was taken over by the finance commissioner. The maker of the note then made payment directly to the finance commissioner. In a suit by the trustee for the directors to obtain the payment, the court held the trustee entitled to a preferred claim in the amount of the payment.
 
 
 29
 If mademoiselle had made a specific payment on the note in the amount now claimed by Union, this case would come within that rule. The difficulty is that there was such payment coming in to SFNB or to the receiver, but only an offsetting against the indebtedness of previously established credits. Such an offset is insufficient to establish a fund which Union can claim as its own.
 
 
 30
 An illustration of this is Lifsey v. Goodyear Tire & Rubber Co., 67 F.2d 82 (4th Cir. 1933). There, Crowell Motor Company borrowed $600 from Goodyear and executed a promissory note for that amount. Shortly before the note matured, Goodyear sent it to Crowell's bank for collection. Crowell drew a check on its account with the bank and presented the check to the bank in payment of the note. The note was cancelled and given to Crowell, but before any bookkeeping entries were made or the proceeds sent to Goodyear, the bank was declared insolvent and closed. Goodyear sued the receiver for preferential payment in the amount of the check. The court held that no preference was established because 'there was no augmentation of the assets of the bank as a result of the giving of the check, but a mere shifting of credits.' 67 F.2d at 83. See also in re Royersford Trust Co., 317 Pa. 490, 178 A. 288 (1935) where the mortgage in which a minor's estate had a $1700 participation interest was paid off by a check drawn on the mortgagor's account with the trust company and turned over to the trust company. The court held that the minor's estate had no preference because there was no 'tracing of the trust res to, and a showing that it is contained in some particular property, security, fund or account, separate and distinct from the general assets of the bank' since this was but a 'bookkeeping transaction.' 178 A. at 289.
 
 
 31
 As in both Lifsey and Royersford, there is in our case only a shifting of credits within the accounts of SFNB. The set-off has not augmented the assets in the hands of the receiver or created a specific fund to which equity will attach property rights. The use of notes or checks to offset assets or liabilities of the insolvent bank does not establish a preferred claim. This is the teaching of Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869 (1935). That case involved a collecting bank which had sent a check made out to respondent as payee through to collection, received the proceeds, and sent its draft including that amount to respondent's forwarding bank just prior to insolvency. The lower courts held that respondent, as payee, was entitled to a preference over the general creditors in the amount of the check. The Supreme Court reversed and held that no trust could be impressed on the assets of the insolvent collecting bank because the check had been used in the clearing house process to offset checks drawn on the insolvent bank.
 
 
 32
 'What happened in the clearing house was this, that a check for $2,196.89, due to the collecting bank as agent or fiduciary, was used to cancel or extinguish liability upon a check or checks of equal amount due from it as principal * * *. At the close of the day there was not a dollar in the treasury of the agent that could be identified as part of the proceeds of collection or as a substitute therefor. If the money had been paid over the counter with the understanding that it was accepted as a special deposit, the doctrine of a continuing trust would charge the agent with a duty to set the proceeds of collection apart from other assets, and hold them intact for transmission to the forwarder. Nothing of the kind was done. * *
 
 
 33
 * * * Currency paid over the counter and deposited in a vault is a thing that can be identified and so subjected to a trust whenever in equity and conscience a trust should be implied. * * * But the situation is very difficult when what has been received by the collecting agent is not a thing at all, but a reduction of liabilities by set off or release (citations omitted). A debt does not furnish a continuum upon which a trust can be imposed after cancellation or extinguishment has put the debt out of existence.
 
 
 34
 * * * What was done by the collecting bank through a settlement in the clearing house has not increased the assets available for distribution in the hands of the receiver.' 294 U.S. at 222, 223-224, 55 S.Ct. at 397.
 
 
 35
 Thus, the essential element of a preference is missing from Union's claim: there has been no augmentation of the bank's assets. In fact, as appellant points out, the set-off has actually decreased the assets in the hands of the receiver by reducing the debt owed to the bank by Mademoiselle. The bank's debt on the deposit has in effect been cancelled out by a paper transaction, and provides no basis for a preferential payment.
 
 
 36
 The judgment in favor of appellees Mademoiselle of California is affirmed, and in favor of Union is reversed.