**In re REPUBLIC FINANCIAL CORPORATION, an Oklahoma corporation, Debtor.**

**In re REPUBLIC TRUST & SAVINGS COMPANY, an Oklahoma trust company, also dba Western Trust and Savings Company, Debtor.**

**Bankruptcy Nos. 84–01460, 84–01461.**

United States Bankruptcy Court, N.D. Oklahoma.

March 21, 1985.

James W. Keeley of the firm of Woodson, Phillips & Associates, Inc., Tulsa, Okl., for M.E. Messick and Eleanor Messick.

Sam G. Bratton II of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for Jack D. Jones, Trustee in Republic Financial Corp., and Jack D. Jones, Trustee in Republic Trust & Sav. Co.

## ORDER GRANTING MOTION TO SETOFF

MICKEY D. WILSON, Bankruptcy Judge.

This action was brought by plaintiffs M.E. and Eleanor Messick (Movants) who seek to setoff the Negotiable Rate Terms Thrift Certificate securing sums deposited with Republic Financial Corporation (RFC) against a Promissory Note now held by Republic Trust and Savings Corporation (RT & SC). Arguments were heard on December 28, 1984, and the matter taken under advisement. Judicial notice was taken of the pleadings filed, documents properly entered into evidence and sworn statements of witnesses examined by counsel in cases numbered 84–01460, 84–01461 and 84–01462. Having taken such notice, this Court orders that stay granted Republic Finance Corporation and Republic Trust and Savings Corporation be modified so as to allow Movants to setoff their claim against RFC with their obligation owed to RT & SC pursuant to 11 U.S.C. § 553. Further, this Court orders that the remaining balance due Movants from RFC under Negotiable Rate Terms Thrift Certificate agreement be calculated pursuant to 11 U.S.C. § 502(b)(2).

Evidence presented shows that Movants became a creditor of RFC by depositing $15,476.60 with RFC on December 5, 1983. In exchange, Movants received a Negotiable Rate Terms Thrift Certificate in which debtor RFC agreed to repay the deposit plus interest on December 5, 1984. Evidence presented also shows that Movants became a debtor of RFC by borrowing $13,-848.00 from RFC on February 21, 1984. In exchange, Movants signed a Promissory Note in which Movant-debtors agreed to repay the loan plus interest on December 5, 1984. Movants pledged the RFC Thrift Certificate as collateral for the loan evidenced by the security agreement. The creditor-debtor relationships established between RFC and Movants in the two transactions thereby demonstrate the initial mutual relationship intended by the two parties.

The promissory note was sold for valuable consideration by RFC to RT & SC on August 27, 1984. Less than one month later, RFC, RT&SC and Republic Bancorporation, Inc. (RBI), the corporation which owned all the shares of stock in RFC and RT & SC, each filed their individual petition seeking relief under the Bankruptcy Code on September 24, 1984. Movants now request that this Court modify the automatic stay afforded debtor corporations to grant setoff of the initial mutual debts between Movants and RFC in the amount of $15,-596.26. Further, Movants request that this Court allow the remaining balance due them from RFC under the Negotiable Rate Terms Thrift Certificate agreement in the amount of $1,427.26 be allowed as claim against RFC, while the claim for $15,596.26 by either RFC or RT & SC be forever barred.

 This Court finds that under 11 U.S.C. § 553, Movants are entitled to setoff the money claimed by RT & SC against the money owed them by RFC. Title 11 U.S.C. § 553(a) states:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt

owing by such creditor to the debtor that arose before commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case,

. . .

Section 553 essentially preserves, with some changes, a creditor's right to setoff that was found in former Section 68 of the Bankruptcy Act. In general, setoffs are allowed in bankruptcy to the extent that they are based upon mutual obligations existing between the debtor and a creditor based on a concept of fairness. *Bridgeport Co., Inc. v. U.S. Postal Service*, 39 B.R. 118 (Bankr.E.D.Ark.1984). Courts have held that setoffs are permissive rather than mandatory and are placed within the control of the Bankruptcy Court to exercise discretion in line with principles of equity. *In re Princess Baking Corporation*, 5 B.R. 587, 2 C.B.C.2d 1071, 1074 (Bankr.S.D. CA 1980). A creditor, in order to establish the right to a setoff, must prove: "(1) a debt owed by a creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and claim must be mutual obligations." *Matter of Fred Sanders Co.*, 33 B.R. 310, 311 (Bankr. E.D.Mich.1983), citing *Waldschmidt v. Columbia Gulf Transmission Co.*, 23 B.R. 147, 151 (Bankr.M.D.Tenn.1982).

As applied to the instant case, the critical requirement of Section 553(a) setoff that must be met is that of mutuality. "Mutuality" has been defined in many cases and essentially requires that, "To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy 553.04[3] at 553–22, 23 (15th ed. 1983). In addition, "Setoff is only permitted to the extent that a creditor on one claim is also a 'debtor' on a second claim between identical parties, and only if such claims are due and owing without any contingencies." *Matter*

*of Springfield Casket, Inc.*, 21 B.R. 223, 228 (Bankr.S.D.Ohio 1982).

The rights of assignee banks holding promissory notes from insolvent banks in Oklahoma was originally addressed by the Oklahoma Supreme Court in *Ward v. Oklahoma State Bank of Atoka*, 151 P. 852 (1915). In that case, a depositor-borrower was being sued on a promissory note owed an insolvent bank by an assignee bank of that note. The assignee bank had purchased the note from the Bank Commissioner, who had taken possession of the assets of the insolvent bank as part of his duties. At trial, the depositor-borrower offered to prove that the promissory note had been paid, but the evidence was excluded on the theory that the assignee bank was a holder in due course against whom such defense was not available. On appeal, this decision was reversed and the cause remanded because the Bank Commissioner, as receiver, was held to have taken the note subject to all defenses of the insolvent bank and therefore an assignee of that note would obtain no better rights than those the Bank Commissioner held.[1]

The leading case which extended the general rule of the depositor's right of setoff of mutual debts to situations involving loan participation agreements is *Federal Deposit Ins. Corp. v. Mademoiselle of California*, 379 F.2d 660 (9th Cir.1967). In this case, the court addressed the issues of (1) whether Mademoiselle of California (Mademoiselle) was entitled to set off its deposit in account with the insolvent San Francisco National Bank (SFNB) against a note due SFNB, and if so, (2) whether Union Bank (Union), as holder of an 80% participation interest in that note, was entitled to a preferred claim for 80% of the setoff. The appellate court held that Mademoiselle was entitled to set off their account against the note in spite of the assignment but that Union, as holder of 80% interest, was not entitled to a preferred claim. The FDIC,

---

1. This decision is consistent with 12A O.S. 3-302(1)(c). The theory of holder in due course has not been introduced into this motion and is

therefore not addressed by this decision except as an introduction to setoff.

as receiver of SFNB, argued that the 80% partial assignment to Union deprived the debts between Mademoiselle and SFNB of their mutuality. The court stated that as an assignee of part of the claim, Union took it subject to any counterclaim and defenses against it. Therefore, the assignment did not defeat the maker's claims against the assignor, especially since Mademoiselle was never notified of the assignment, continued to make its payments on the note directly to SFNB, and since SFNB retained possession of the note. The court weighed the equities involved and found that the insolvency of SFNB constituted a sufficient ground for the allowance of a setoff not otherwise available. The court stated that, "... the unannounced transfer of an interest or sale of a participation certificate in the note should not dilute the uninformed depositor's ordinary right of setoff." *Id.* at 664.

United States District Judge Russell recently relied on the *Mademoiselle* decision to further extend the right of a depositor-borrower to setoff in *Chase Manhattan Bank, N.A. v. F.D.I.C.*, 554 F.Supp. 251 (W.D.Okla.1983). Chase Manhattan Bank (Chase) had purchased approximately $212,225,000.00 worth of participations in certain loans made by Penn Square Bank (Penn Square). Thereafter, the Comptroller of the United States declared Penn Square insolvent and appointed the F.D.I.C. as receiver. The F.D.I.C. offset deposits against loans owed Penn Square, thereby reducing or cancelling the borrowers' indebtedness. Chase claimed status as a preferred claimant and demanded that the F.D.I.C. remit monetary sums to it equal to Chase's share of the benefits of such setoffs. The F.D.I.C. refused to do this. The court noted that even though some of the borrowers from Penn Square had notice that a loan participation had been sold to another bank, this did not shift the equitable rights from the borrowers to the participating bank. The court also noted that even though the participation had been "sold" and not assigned, Penn Square reserved the right to enforce obligations, retained the promissory notes and collected payments due on the notes from borrowers. The court held that the setoffs were proper, the setoffs did not augment assets in the hand of F.D.I.C. as receiver, and that Chase was not entitled to a preferred claim.

In *Hibernia National Bank v. F.D.I.C.*, 733 F.2d 1403 (10th Cir.1984), the appellate court affirmed another decision rendered by Judge Russell involving loan participation agreements and Penn Square Bank. At or after the original making of each loan, Penn Square Bank (Penn Square) sold a participation interest of between 47% and 100% to Hibernia National Bank (Hibernia). These participations totaled approximately $17,937,545.00. Under the agreement with Hibernia, Penn Square retained the loan documents and remitted to Hibernia its percentage of collections. In each instance, the only note evidencing a creditor-debtor relationship was the original note executed between Penn Square and the borrower. Apparently only two of the borrowers were aware that 100% of their debt would be assigned and sold to Hibernia, who would totally fund the loan. Hibernia claimed that its participation transferred ownership in such loan to it. The court held that it did not. The court found that the district court had properly extended the right of setoff by borrower-depositors to loans participated in by Hibernia. The court stated that the district court had properly relied on its decision in *Chase Manhattan Bank, N.A. v. F.D.I.C., supra.* wherein it adopted the reasoning of *F.D.I.C. v. Mademoiselle of California, supra.*, in these setoff issues. The appellate court quoted these prior decisions in stating, "... an offset is not a payment but merely a setting-off against the loan of previously established credits. Under *Mademoiselle*, such an offset is insufficient to establish a fund which the claimant may call its own. An offset is a bookkeeping transaction or 'a mere shifting of credits'. By its very nature an offset cannot augment the receiver's estate." *Hibernia National Bank v. F.D.I.C., supra*, at 1408, citing *Chase Manhattan Bank v. F.D.I.C., supra*, at 251.

In the instant case, the issue is whether Movants are entitled to set off their deposit to RFC against the note originally due RFC and if so, whether the assignment of that note by RFC to RT & SC will prevent exercise of that right. The debt Movants owed RFC and the debt RFC originally owed Movants involved all the same rights and were between the same parties standing in the same capacity. The assignment of the promissory note to RT & SC by RFC occurred within the thirty (30) days next preceding the filing of the petition seeking relief under the Bankruptcy Code even though all debtor corporations were presumed insolvent under 11 U.S.C. § 553(c) for the ninety (90) days next preceding its filing of the petition seeking relief under the Bankruptcy Code. Movants had no reason to be aware, nor did they know, of the assignment as no payment was yet due under the terms of the note. RFC and RT & SC were both doing business in the same building and operated their businesses in such a manner as to cause confusion to customers concerning the capacity in which each corporation functioned. Each corporation essentially "covered" for each other as to many business matters, even assuming the duties and responsibilities of the other to carry on business. It is obvious to this Court from pleadings filed in the above-styled cases that creditors of RFC will not receive 100% distribution on their allowed claims while RT & SC has a duty to collect 100% of the indebtedness due them. It would be a grave injustice and cause substantial hardship and monetary loss to Movants to deny setoff of the mutual claims and obligations by virtue of the acts and activities of the debtor corporations.

Movants have further requested that the remaining balance due them from RFC under the Negotiable Rate Terms Thrift Certificate be allowed them as a valid unsecured claim against RFC in the amount of $1,427.26. This in itself has raised an additional issue.

It is undisputed that, "The right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely ow-ing but not presently due, or where a definite liability has accrued but is as yet unliquidated." 4 Collier on Bankruptcy 553.-10[2] at 553–48, 49 (15th ed. 1983). However, 11 U.S.C. § 502(b)(2) precludes the assessment of postpetition interest. Section 502(b)(2) provides that a claim is disallowed if "... such a claim is for unmatured interest; ..." Both the House and Senate Judiciary Committee comments agree with the treatment of unmatured interest. The Senate Judiciary Committee comments read as follows, "Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principle amount of all claims against the debtor." S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5849.

In consideration of Section 502(b)(2) and the Congressional comments regarding that section, this Court would be remiss to award Movants the full amount they have claimed under the Negotiable Rate Terms Thrift Certificate agreement as their claim had not matured as of the date of filing of the petition seeking relief under the Bankruptcy Code by RFC.

Therefore, in light of precedent decisions and Congressional comments, this Court orders that the stay granted RFC and RT & SC be modified so as to allow Movants to set off their claim against RFC with their obligation owed to RT & SC pursuant to 11 U.S.C. § 553. Further, this Court orders that the balance due Movants from RFC under the Negotiable Rate Terms Thrift Certificate agreement calculated pursuant to 11 U.S.C. § 502(b)(2) be allowed as an unsecured claim against RFC.

AND IT IS SO ORDERED.