**GRADY PROPERTIES COMPANY,**
Plaintiff–Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,** Defendant/Third–Party Plaintiff/Appellee,

v.

**FH & L INVESTMENTS, an Oklahoma General Partnership; Donald P. Ferguson; Donald H. Horn; and Ronald H. Lawson; Individually and as General Partners of FH & L Investments; Ronald H. Lawson and Karen A. Lawson, Husband and Wife, Third–Party Defendants/Appellants.**

No. 89–6392.

United States Court of Appeals,
Tenth Circuit.

March 7, 1991.

---

Donald P. Ferguson (Donald H. Horn, on the briefs), of Ferguson, Horn and Lawson, Chickasha, Okl., for appellants.

James M. McCoy (Kenneth I. Jones, Jr., with him, on the brief), of Jones, Blaney & Williams, Oklahoma City, Okl., for appellee.

Before MOORE and BALDOCK, Circuit Judges, and ANDERSON,* District Judge.

JOHN P. MOORE, Circuit Judge.

In this appeal, Grady Properties Company challenges the district court's granting summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC), foreclosing its attempt to offset promissory notes against unrelated accounts receivable. Finding no error in the court's analysis, we affirm.

The parties stipulated to the facts. From 1984 through 1987, the law firm of Ferguson, Horn, Lawson & Heck (the Law Firm), provided legal services to Universal Savings Association (Universal I), generating accounts receivable in the amount of $73,018.29 for attorney fees. In 1986, Donald Ferguson, Donald Horn, and Ronald Lawson, individually and as general partners of FH & L Investments (FH & L, collectively), an Oklahoma general partnership, obtained three separate loans totaling $73,677.04 from Universal I.[1] The loans were evidenced by promissory notes and secured by separate mortgages on three parcels of real property located in Grady County, Oklahoma.

In February 1987, the Federal Home Loan Bank Board declared Universal I insolvent. Consequently, the Federal Savings & Loan Insurance Corporation (FSLIC),[2] was appointed receiver and organized Universal Savings Association (Universal II), a federal savings and loan association, as successor-in-interest to Universal I. In the transfer of assets, Universal II recognized its obligation to pay the legal fees.[3]

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1. Ronald H. and Karen A. Lawson, husband and wife, obtained one of these loans for $37,700.

2. The Financial Institutions Reform and Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, § 401(a), substituted FDIC for FSLIC. Although this federal action was initially undertaken by FSLIC, FDIC has been denominated to replace FSLIC. However, for all practical purposes, the substitution does not alter our analysis of this case. *See FDIC v. McCullough*, 911 F.2d 593, 598, n. 4 (11th Cir. 1990). Because FSLIC became the receiver of the failed financial institution and instituted this action, we shall refer to the interest represented by the receiver in FSLIC's name.

3. The district court noted that this stipulation was limited to the issues of the case but did not "release any rights, if any there be, belonging to Defendant [FSLIC] and against the firm of Ferguson, Horn, Lawson & Heck for malpractice." However, the parties do not dispute the amount of Universal I's accounts receivable to the Law Firm.

In November 1987, Grady Properties, an Oklahoma corporation, acquired title to FH & L's three tracts of land encumbered by Universal I's mortgage liens. In addition, Grady Properties and FH & L executed an Assignment of Accounts Receivable in which the Law Firm assigned the $73,018.29 owed in attorney fees from Universal I to Grady Properties. Subsequently, Grady Properties notified Universal II that it had offset the debts secured by the mortgages against the accounts receivable and tendered a cashier's check for $658.75, the excess of the debts over the receivables. Unwilling to recognize the offset and release the mortgages, Universal II returned the check to Grady Properties. Instead of paying the November installments due on the notes, Grady Properties filed an action in state court to quiet title and cancel the real estate mortgages based on its attempted offset.

In July 1988, Universal II failed, and FSLIC, again appointed receiver, became the holder and owner of these promissory notes and mortgages. FSLIC removed the quiet title action to federal court. Upon the parties' agreement that judgment would be rendered on the stipulated facts, the district court rejected Grady Properties' contention that Oklahoma law recognized the validity of its offset which was concluded in November 1987, long before FSLIC was appointed receiver of Universal II. Recognizing that *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892), and its progeny circumscribe an area of permissible equitable setoffs, the district court, however, concluded the setoff in this case represented an impermissible preference under the National Bank Act, 12 U.S.C. § 1729.[4] Unlike the offset in *Scott*, in which there was an agreement presumed from the arrangement between the two banks, the district court observed, this setoff was based on two separate and unrelated commercial transactions and completed without any agreement with the savings and loan. Indeed, when the setoff was tendered, Universal II rejected it. Thus, the district court ordered Grady Properties to line up with other general creditors of a failed financial institution to seek its pro rata distribution for the accounts receivable. In turn, FSLIC was permitted to accelerate the promissory notes and take other steps necessary to protect and augment the receiver's estate.

Grady Properties now urges the district court erred in finding the offset lacked the requisite mutuality to align this case with *Scott* and remove it from the scheme mandated by the National Bank Act.[5] To support this position, Grady Properties characterizes putting the mortgages "in place" with the accounts receivable as the functional equivalent of mutuality. This unilateral act of matching the mortgages to the accounts receivable occurred in November 1987, well before the creation of the receivership, Grady Properties emphasizes. Thus, Grady Properties contends, the National Bank Act does not even apply. However, if it did, Grady Properties adds, the timing of the offset would not defeat its validity under *Scott*'s equitable analysis. Grady Properties relies on *FDIC v. Mademoiselle of Cal.*, 379 F.2d 660 (9th Cir. 1967).

Our review of the district court's judgment on stipulated facts is plenary. *McMahon v. McDowell*, 794 F.2d 100 (3d Cir.), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). We conclude the court correctly characterized the facts and properly interpreted the National Bank Act.

A general rule is provided in *Scott v. Armstrong*, 146 U.S. at 499, 13 S.Ct. at

---

**4.** Section 1729(b), since repealed, provided in part:

(1) In the event that a Federal association is in default, the Corporation shall be appointed as conservator or receiver and as such—
(A) is authorized—
. . . .
(v) to proceed to liquidate its assets in an orderly manner. . . .

**5.** The parties raise and brief the applicability to these facts of the D'Oench Doctrine, *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and federal holder-in-due-course rules. We do not address either argument, finding them unnecessary to the proper resolution of this case.

148, which permits an offset within the context of the insolvency of a national bank. *See* 7 *Michie on Banks and Banking*, ch. 15, § 240 (1989). In that case, Fidelity Bank loaned the Farmer's Bank a sum of money with the arrangement that the money borrowed would be placed to the credit of Farmers' Bank on the books of Fidelity. When Fidelity Bank was declared insolvent, the undrawn balance was setoff. against the note. The Court held the setoff was not a preference forbidden by national banking law because of the clear evidence the underlying agreement contemplated a mutual transaction. "By mutual credit, in the sense in which the terms are here used, we are to understand, a knowledge on both sides of an existing debt due to one party, and a credit by the other party, founded on, and trusting to such debt, as a means of discharging it." *Id.* at 507, 13 S.Ct. at 150. Because the credits were reciprocal and "part of the same transaction," *id.* at 508, 13 S.Ct. at 151, the setoff was not a preference. In *Scott*, the agreement for a setoff could be implied from the nature of the transaction itself.

At this juncture, the facts of this case veer considerably from those in *Scott.* While Grady Properties owed a debt to Universal II, Universal II neither held a credit nor agreed to an arrangement to maintain the outstanding accounts receivable from an independent source as a credit against Grady Properties' debt. Only one side of the mutuality equation is present. Hence, as the district court correctly noted, *Scott* does not sanction using a separate and unrelated commercial transaction with a third party to offset debts owed to the failed financial institution.

Indeed, *FDIC v. Mademoiselle of Cal.*, 379 F.2d at 660, is not to the contrary. In that case, Mademoiselle borrowed $60,000 from the San Francisco National Bank (SFNB). Without notifying Mademoiselle, SFNB sold and assigned an 80% interest in the note to Union Bank. When SFNB was declared insolvent, Mademoiselle attempted to setoff the note with the balance of a

commercial account held at SFNB. Union sought a preferred claim against the assets of SFNB for 80% of the deposit. The Ninth Circuit held that although a portion of this note had been assigned, Mademoiselle's setoff fell within the logic of *Scott.* Mademoiselle's deposit account increased SFNB's assets, which " 'in the hands of the receiver to that amount ought in equity and good conscience, under the law, to be allowed the amount of his deposit at the time the bank closed.' " *Id.* at 663 (quoting *People ex rel. Nelson v. Bank of Harvey*, 273 Ill.App. 56, 59–60 (Ill.App.1933)). As in *Scott*, only the balance of the debt after setoff is considered an asset of the bank. However, because of the lack of mutuality and reciprocity between Mademoiselle's credit and Union's attempted offset based on its participation in the loan, the Ninth Circuit reversed the district court's granting Union a preferred claim against the assets of SFNB for 80% of the Mademoiselle deposit.

▆ Grady Properties cannot enjoy this equitable protection from the National Bank Act because the transactions cannot be manipulated to permit a finding of mutuality of obligation. Grady Properties owed a debt to Universal II. The Law Firm held accounts receivable from Universal II. That the Law Firm assigned its credit to Grady Properties does not alone transform the nature of the relationship between Grady Properties and Universal II, now represented by FDIC. To deem an arrangement or agreement by Universal II contemplating an offset on these facts, as Grady Properties suggests, is implausible. In the face of Universal II's rejection of the offset tender, it is sheer fancy. As the Fifth Circuit noted in *Interfirst Bank–Abilene, N.A. v. FDIC,* 777 F.2d 1092, 1095 (5th Cir.1985), " '[m]utuality' requires that the deposit of [one bank] and its debt to the [second bank] be owed in the same capacity so as to prevent such unjust results...." [6]

Given the lack of mutuality underpinning the attempted offset, the district court correctly looked to the provisions of the Na-

6. In *Interfirst Bank–Abilene,* 777 F.2d at 1092, the court permitted Interfirst Bank to offset deposits made by Ranchlander National Bank in its correspondent account at Interfirst with

outstanding loans (participations) Interfirst owed Ranchlander before Ranchlander was declared insolvent. The Fifth Circuit rejected the FDIC characterization of the transaction as a

tional Bank Act which fix rights and liabilities when a national bank is declared insolvent. *FDIC v. McKnight*, 769 F.2d 658, 661 (10th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). Specifically, 12 U.S.C. § 91 prohibits payments by the bank that prefer some creditors over others, and § 194 requires a ratable distribution of assets among all general creditors of the receiver's estate. "As of the moment that a national bank is declared insolvent and goes into the hands of a receiver, federal law governs the distribution of the bank's assets." *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 759 (10th Cir. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). The assignment to Grady Properties of the accounts receivable must be analyzed under federal law like any other claim made against the receiver of Universal II. Thus, Grady Properties must present its claim like other general creditors of the insolvent bank and await a ratable distribution of the bank's assets.

AFFIRMED.

preference finding the claim was provable and the debt was owed in the same capacity as the deposits against which it was offset. A similar analysis was applied in *Hibernia Nat'l Bank v.* *FDIC*, 733 F.2d 1403 (10th Cir.1984), and *Bromfield v. Trinidad Nat'l Inv. Co.*, 36 F.2d 646 (10th Cir.1929), cited by the district court.